914 F.2d 258
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Juan SALAZAR and Leonor Salazar, his wife, Plaintiffs-Appellants,
v.
WESTINGHOUSE ELECTRIC CORPORATION, d/b/a Ledermann Elevator
Company, Defendant-Appellee.
 No. 89-2017.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1990.
 
 Before KRUPANSKY and ALAN E. NORRIS, Circuit Judge, MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs Juan and Leonor Salazar filed this diversity action sounding in negligence and products liability after an overhead section of a freight elevator door collapsed on Mr. Salazar. The jury returned a verdict for the three defendants named in the suit, the manufacturers of the elevator and of the elevator doors, and the maintenance contractor. The Salazars appeal only the verdict for the maintenance contractor contending that the trial court erred in failing to give a curative instruction, in refusing to give two jury instructions, and in refusing to allow the use of a response to an interrogatory to impeach a witness. For the reasons that follow, we affirm.
 
 I.
 
 2
 Juan Salazar was an employee of the Ford Motor Company in Dearborn, Michigan. Near midnight, on February 5, 1986, he was driving a small materials handling tractor on the second floor of the plant and approached the freight elevator. Two vertically biparting doors separate the second floor from the platform of the freight elevator. When the doors open, the upper section rises and the lower section descends, until the lower section is level with the plant floor. The lower section serves as a bridge between the second floor and the elevator. As Salazar was driving his tractor onto the elevator, the upper section of the door fell upon him, causing serious injury.
 
 
 3
 The two sections of the door are connected by one continuous two-leaf chain attached to rods on the lower door on each side by a connecting mechanism consisting of a "master-link," a three-leaf chain, and a cotter pin. Salazar alleged that the chains used to connect the door were of inadequate tensile strength and that the chains and connecting mechanism were improperly repaired after repeated breakages. The maintenance contractor, Westinghouse Electric Company d/b/a Ledermann Elevator Company ("Ledermann"), defended by alleging that the day before the accident Ford employees replaced "hard" cotter pins in the connecting mechanism with "soft" ones, and this caused the doors to fail. The jury returned a verdict of "no cause of action" and judgment was entered for Ledermann.
 
 II.
 
 4
 Salazar contends that the court erred in refusing to give a curative instruction or grant a new trial when counsel for Ledermann asked him whether he was receiving workers' compensation benefits. Ordinarily, evidence of a collateral source of compensation is inadmissible in Michigan courts. The reference occurred during the following colloquy on cross-examination:
 
 
 5
 Q. Now, sir, with regards to your income at Ford Motor Company, your net pay when you actually brought checks home, that was about $500 a week?
 
 
 6
 A. Around there.
 
 
 7
 Q. Around there. Now, sir, you are currently receiving on a weekly basis workers' compensation benefits, aren't you?
 
 
 8
 A. Yeah.
 
 
 9
 MR. AULD: Your Honor, I object to any sort of collateral source.
 
 
 10
 THE COURT: Sustain the objection.
 
 
 11
 MR. STUART: Your Honor, I think it can go to his motivation to return to work.
 
 
 12
 THE COURT: No. I will sustain the objection. It is an improper question.
 
 
 13
 The next morning, before the jury was brought in, Salazar's counsel sought a curative instruction. The court responded, "No, I don't think I am going to give any instruction. I chastised Mr. Stuart at the time in front of the jury and said it was highly improper. I think that is sufficient."
 
 
 14
 In Michigan, as in most jurisdictions, evidence of collateral sources of compensation to an injured plaintiff may not be admitted for the purpose of mitigating damages. Lynch v. Sign of the Beefeater, Inc., 90 Mich.App. 358, 282 N.W.2d 321, rev'd, 407 Mich. 866, 283 N.W.2d 632 (1979); Hill v. Harbor Steel & Supply Corp., 374 Mich. 194, 214, 132 N.W.2d 54, 62-63 (1965); Harbenski v. Upper Peninsula Power Co., 118 Mich.App. 440, 325 N.W.2d 785 (1982); Blacha v. Gagnon, 47 Mich.App. 168, 209 N.W.2d 292 (1973).
 
 
 15
 Salazar contends that simply sustaining his objection to the evidence was not enough; that the court erred in failing to give him a curative instruction or, in the alternative, a new trial. Although a curative instruction would have been advisable, we are unable to say that the court's failure to provide one is a ground for reversal. The court immediately sustained the objection and characterized the question as "improper" in the presence of the jury. Salazar has not provided us with any authority holding that where an objection to admission of a collateral source is sustained, and only a single reference was made in the presence of the jury, the failure to give a curative instruction is a ground for reversible error. Rather, the authority he cites for reversal involves situations where a significant amount of testimony regarding collateral source evidence was admitted, over objection, including dollar amounts, and jury instructions directing the jury to mitigate. In the context of an eight-day trial, the single reference does not warrant reversal.
 
 
 16
 This conclusion is supported by decisions of Michigan appellate courts which have held that an erroneous admission of evidence relating to damages does not require reversal where the jury has returned a verdict of "no cause of action." See Kohn v. Ford Motor Co., 151 Mich.App. 300, 390 N.W.2d 709 (1986) (evidence relating to plaintiff's birth defects erroneously admitted for purposes of mitigating damages did not invalidate "no cause of action" verdict); Beadle v. Allis, 165 Mich.App. 516, 418 N.W.2d 906 (1987) (failure to give instruction on preexisting condition, though error, is not ground for reversal because jury verdict of "no cause of action" means they did not reach the damage issue). Salazar rejects these holdings asking us to interpret the summary reversal by the Michigan Supreme Court in Lynch, and dicta in an earlier case, McCullough v. Ward Trucking Co., 368 Mich. 108, 114, 117 N.W.2d 167, 170 (1962) (quoting 77 A.L.R.2d 1154, 1156), for the proposition that mere mention of evidence regarding a collateral source of compensation always requires reversal, since the evidence has a particularly strong tendency to prejudice the jury either as to liability or as to damages.
 
 
 17
 Lynch and McCullough were both cases in which collateral source evidence was admitted or was sought to be admitted rather than cases in which the evidence was merely mentioned before the court ruled it inadmissible. Moreover, while the Supreme Court in Lynch rejected the court of appeals' attempt to separate the liability and damage issue, the verdict in Lynch was "in favor of the defendant" rather than a "no cause of action" verdict and, as previously noted, the collateral source testimony admitted was substantial in quantity and character. Although dicta in McCullough, comprised of a quote from A.L.R.2d, raises the possibility that collateral source evidence can be prejudicial to the liability determination, the case does not hold that collateral source evidence is per se prejudicial to the liability determination as plaintiff asserts. Rather, its holding is that plaintiffs may avail themselves of motions in limine to exclude references to such evidence, a practice which plaintiff's counsel could have, but did not, avail themselves of in the present case. The single reference, followed by an immediate objection, is not so prejudicial as to have infected the liability determination. The Michigan Supreme Court has not established a rule of per se prejudice when collateral source information is erroneously mentioned.
 
 III.
 
 18
 Salazar next asserts that the court erred in failing to give an adaptation of a Michigan standard jury instruction which advises the jury of the circumstances under which an adverse inference may be drawn from evidence having been lost while it was under a party's control. Michigan's Standard Jury Instruction 2d 6.01 sets out several versions of the rule that such an inference may be drawn where a party fails to offer evidence which was under his control and could have been produced by him, and no reasonable excuse for his failure to produce the evidence was given. The versions differ, depending upon whether control or failure to excuse have been established or are disputed and left to the jury's determination.
 
 
 19
 Salazar claims that important evidence disappeared while it was under the control of Ledermann's employees. Shortly after the accident occurred, barricades were set up to preserve the site. The next morning, the state elevator inspector and representatives of Ledermann were notified of the accident. Three Ledermann representatives, William Niedoliwka, Ernest Schultz, and Otis McMillan, arrived at the scene before the state inspector. Niedoliwka testified that he saw cotter pin shearings and a section of a "three-leaf" chain on the elevator floor. He picked up the chain and pointed it out to his supervisor, Ernest Schultz. Schultz told him to "drop it ... helpers are to be seen and not heard. Go stand off in the corner and not be heard." Niedoliwka testified that he returned the items to the elevator floor where he found them. The state inspector arrived and examined the area but never found the shearings or chain section spotted by Niedoliwka.
 
 
 20
 Salazar requested an instruction which was an adaptation of one of S.J.I.2d 6.01's alternative versions:
 
 
 21
 The defendant, Westinghouse Electric Corporation d/b/a Ledermann Elevator Company in this case has not offered to introduce the defective door chains, the master links or the component parts which [were] observed on February 6, 1986, the day of the incident. As this evidence was under the control of defendant, Westinghouse Electric Corporation d/b/a Ledermann Elevator Company and could have been produced by said defendant, and no reasonable excuse for defendant's failure to produce the evidence was given, you may infer that the evidence would have been adverse to the defendant, Westinghouse Electric Corporation d/b/a Ledermann Elevator Company.
 
 
 22
 The proffered instruction assumes that both control and absence of reasonable excuse had been established. The court denied the instruction, presumably, because there was no evidence that Ledermann Elevator had control of the missing evidence at any time other than the moment Niedoliwka picked up the items.
 
 
 23
 After the jury had been charged, plaintiff's counsel again requested an instruction:
 
 
 24
 MR. AULD: Your Honor, as I mentioned earlier, I would ask that the Court instruct the jury on a charge similar to SJI 2d 601, failure to produce evidence that Defendant Westinghouse Electric Corporation d/b/a Ledermann in this case has not offered to introduce the defective door chains, the master links or the component parts.
 
 
 25
 THE COURT: I can shorten that. We discussed that in our pre-charge conference. I find no basis for such a charge.
 
 
 26
 Salazar claims that the court should have given the adaptation of S.J.I.2d 6.01 he originally offered, or another alternative version of the standard instruction which would have permitted the jury to draw an adverse inference only if it found that control and absence of reasonable excuse were established. We need not decide whether an alternative should have been given, since it was not requested at trial. In renewing his request, plaintiffs' counsel did not specifically ask for an alternative, and the court was warranted in interpreting his request as merely a renewal of the earlier request. If the court misinterpreted the request, plaintiff had the obligation to clarify it.
 
 
 27
 Failure to give the instruction plaintiff actually requested was not error, since it was not warranted by the evidence. Body Rustproofing, Inc. v. Michigan Bell Tel. Co., 149 Mich.App. 385, 385 N.W.2d 797 (1986). Michigan's court rules provide that the standard jury instructions must be given if they are shown by the evidence to be applicable and state the pertinent law. M.C.R. 2.516(D).
 
 
 28
 The instruction assumed that the missing evidence was and continued to be within Ledermann's control and that it had failed to give a reasonable excuse for its not having been produced. While the evidence suggests that Ledermann had control of the evidence for a brief moment, that evidence by itself cannot warrant an instruction that "this evidence was under the control of the Defendant" and "no reasonable excuse" for its absence has been given.
 
 
 29
 We note that plaintiff's theory nonetheless was presented to the jury in his closing argument. Counsel argued at length that Ledermann intentionally concealed the evidence and the jury was asked to draw adverse inferences from the absence of the evidence.
 
 IV.
 
 30
 Salazar also sought a jury instruction on his unusual susceptibility to injuries. Under the instruction, the jury would have been told that "the defendants take the plaintiff as they find him. If you find the plaintiff was unusually susceptible to this type of injury that fact will not relieve the defendants from liability for any and all damages resulting to the plaintiff as a proximate result of all the defendants conduct." Salazar introduced evidence at trial that he had a preexisting degenerative disc disease, high blood pressure and emotional difficulty, and claimed these conditions were aggravated by the accident.
 
 
 31
 The district court denied the request believing the instruction was unnecessary in light of the limited evidence of his preexisting condition and the court's generic instructions on proximate cause and damage. We are unable to say that the trial court erred in this regard, since there was little or no risk that the jury might attribute Salazar's injuries to his preexisting conditions. Also, because the instruction related solely to damages and the jury's verdict of "no cause of action" indicates it did not reach the damage issue, failure to give the instruction, even if error, would not be a ground for reversal. Beadle, 165 Mich.App. 516 (failure to give S.J.I.2d 50.11 on preexisting conditions, though error, is not a ground for reversal where jury has returned a "no cause of action" verdict.).
 
 
 32
 At trial, Salazar's counsel attempted to admit a response to an interrogatory and a letter from defense counsel supplementing discovery after a witness testified differently from what the interrogatory indicated his testimony would be. The witness, Bill Niedoliwka, originally believed that the accident occurred as a result of the failure of the master link. By the time his deposition was taken, Niedoliwka believed the cause of the accident was the failure of the cotter pins. The court refused to admit the interrogatory and counsel's supplement to it on the ground that they were not listed in the pretrial order of exhibits.
 
 
 33
 Niedoliwka's change of testimony was not a surprise at the time of trial; Salazar's counsel knew at the time of Niedoliwka's deposition that his testimony had changed and could have included the impeachment exhibits in the pretrial order. Counsel offers no excuse for failing to have done so. Even without the proposed exhibits, Salazar's counsel questioned the witness extensively and was able to impeach him by having him admit that his theory of the cause of the accident had changed. Given the extensive cross-examination, exclusion of the exhibits did not affect a substantial right of plaintiff and is not reversible error.
 
 V.
 
 34
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior Judge, United States District Court for the Western District of Michigan, sitting by designation