517 So.2d 1019 (1987)
Tammy Dupre PITRE, et al., Plaintiffs-Appellees,
v.
OPELOUSAS GENERAL HOSPITAL, et al., Defendants-Appellants.
No. 87-209.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
Writ Granted November 30, 1987.
*1020 Andrus & Doherty, Alex Andrus III, Opelousas, for defendant/applicant.
Talbot, Sotile, Carmouche, Marchand & Marcello, Donald T. Carmouche, Donaldsonville, for plaintiff/respondent.
Juneau, Hill, Judice, Hill & Adley, Marc Judice, Kathleen Drew, LaFayette, Watson, Blanche, Wilson & Posner, Debra Templett, Baton Rouge, for defendants.
Before FORET, STOKER, DOUCET, KNOLL and KING, JJ.
STOKER, Judge.
This case comes up before us as a result of our grant of an application for writs by Dr. John Kempf.
Prior to the birth of their second child, Tammy Dupre Pitre and Dwain P. Pitre decided that it was not economically feasible for them to have more than two children. The Pitres allege that they engaged Dr. John Kempf to perform a bilateral tubal ligation on Mrs. Pitre in conjunction with the delivery of their second child, in order to prevent any future pregnancies. Dr. Kempf performed the operation, but it was not successful; Mrs. Pitre conceived and gave birth to their third child, Hannah. Hannah is afflicted with the congenital defect known as albinism.
This litigation consists of two actions: one action brought on behalf of Hannah Pitre by her parents for alleged damages resulting from her birth and the physical defects caused by albinism and an action brought by Tammy and Dwain Pitre for damages which they alleged they suffered individually as a result of Hannah's conception and birth. The defendants named in the two claims are Dr. Kempf, Dr. James McCarthy and Opelousas General Hospital.
The defendants sought dismissal of all or a part of the plaintiffs' actions through exceptions and motions. The trial court overruled all of the exceptions and denied all motions. Because the claims asserted by the plaintiffs have not been given definitive consideration in Louisiana, we granted Dr. Kempf's application for writs in order to consider the correctness of the trial court's denial of the motion to strike, motion for partial summary judgment and exception of no cause of action filed by Dr. Kempf. The issues presented in this litigation are whether Louisiana recognizes a claim for wrongful life and actions alternately designated as wrongful birth, wrongful pregnancy and wrongful conception. In making this determination, we do not work from evidentiary facts gathered at trial; rather, we consider the existence vel non of the asserted causes of action from the allegations of the petition. The question of whether any of the defendants were in fact guilty of negligence or are otherwise liable in tort is not decided here. In addition to the substantive issues considered herein, certain procedural questions are raised by the various motions and exceptions filed by the defendants.

PERTINENT ALLEGATIONS OF THE PETITION
The basis of the plaintiffs' actions and the specific nature of the damages sought by the plaintiffs are contained in paragraphs 5, 9, 10, 11 and 12 of the petition which we set forth in full below:

"5.
As a result of the failure of DR. JOHN KEMPF to properly perform the bilateral tubal ligation and the failure of either the OPELOUSAS GENERAL HOSPITAL, DR. JAMES McCARTHY and/or DR. JOHN KEMPF, to inform your petitioner, TAMMY D. PITRE, that the bilateral *1021 tubal ligation had been improperly performed, she became pregnant.
"9.
HANNAH PITRE was born with a physical deformity, namely albinism, which will require medical attention for the rest of her natural life. Further, HANNAH PITRE has severe problems with visual acuity, cannot see in bright light, and will have permanent visual problems.
"10.
TAMMY D. PITRE, individually, seeks damages for the wrongful conception of the child; expenses incurred during pregnancy and delivery; economic costs of rearing an unplanned and unwanted child; special expenses regarding the child's deformity; expenses for the change in family status, including extra money to compensate for the fact that she must spread her society, comfort, care, protection and support over a larger group; money to replenish the family exchequer so that HANNAH PITRE will not deprive other members of the family; additionally, TAMMY D. PITRE, individually, seeks damages for past, present and future emotional and mental distress and physical pain and suffering.
"11.
DWAIN P. PITRE, individually, seeks damages for loss of consortium, service and society; economic costs of rearing an unplanned and unwanted child; expenses incurred during pregnancy, delivery and post-delivery; expenses for change in family status; special expenses regarding the child's deformity; and emotional and mental distress, past, present and future.
"12.
TAMMY D. PITRE and DWAIN P. PITRE, on behalf of their minor child, HANNAH PITRE, seek damages for the wrongful life of HANNAH PITRE, in that she was born with a physical deformity, namely albinism; future medical expenses; emotional and mental pain and suffering, past, present and future; physical pain and suffering, past, present and future; and for all other equitable relief to which she is entitled.
"WHEREFORE, petitioners, TAMMY D. PITRE and DWAIN P. PITRE, individually and on behalf of their minor daughter, HANNAH PITRE, pray that this suit be filed and that the defendants be cited to appear and answer hereto, and after the lapse of legal delays and due proceedings be had, there be judgment herein in favor of your petitioners and against the defendants, OPELOUSAS GENERAL HOSPITAL and JOHN KEMPF, M.D., P.C., jointly and in solido for their negligence and for damages together with legal interest and costs of these proceedings, as well as for all other relief to which they are entitled according to the law or as may be reasonable in the premises. Petitioners further pray for a trial by jury."
The plaintiffs have designated their individual claim as one of wrongful conception and the claim brought on Hannah's behalf as one for wrongful life. Several treatises, articles and some jurisprudence from other states have attempted to classify, define and distinguish the various claims against doctors and others stemming from the birth of an unplanned or unwanted child. For our purposes terminology will not be determinative of our considerations. As we have noted, the action asserted on behalf of Hannah appears to be generally referred to as a "wrongful life" action in states which have dealt with an action filed on behalf of a child, and actions by the parents are alternately referred to as actions for "wrongful birth," "wrongful pregnancy," or "wrongful conception." One writer suggests that serious confusion results from not distinguishing between a wrongful birth action and a wrongful pregnancy action. See, Paul, Damages for Wrongful Birth and Wrongful Pregnancy in Illinois, 15 Loy.Chi.L.J. 799 (1980). We need not, however, discuss or examine any philosophical or practical distinctions, for it suffices in this case to refer to these actions *1022 as they have been denominated by the plaintiffs. Accordingly, we will refer to the action on behalf of Hannah Pitre as a wrongful life action and that of her parents, Tammy and Dwain Pitre, as a wrongful conception action. We make no distinction between the actions for wrongful birth, pregnancy or conception for purposes of our discussion of this case. Our holding is limited to the particular set of facts in this case and the damages as alleged.

PROCEDURAL ASPECTS OF THE ACTIONS
After the plaintiffs' suit was filed, all of the defendants filed various motions and exceptions. Dr. McCarthy filed an answer and exceptions of no cause of action and a motion for summary judgment.[1] Opelousas General Hospital filed an exception of no cause of action and a motion for summary judgment. Dr. Kempf filed an exception of no cause of action, objecting to both stated causes of action; a motion to strike those portions of the petition which concerned the wrongful life action and certain damages alleged by Tammy and Dwain Pitre individually; and a motion for partial summary judgment as to the damages resulting from Hannah's albinism. As stated before, the trial court overruled all of the exceptions and denied all of the motions. The ruling of the trial court meant that the case would proceed to trial. The plaintiffs had demanded a trial by jury. Because of the nature of the substantive issues involved, we granted Dr. Kempf's application for writs and called the case up to consider the validity of the asserted actions before they went to trial. Dr. Kempf was the sole party to apply for writs, but in granting the writ we ordered a stay of all further proceedings in the case.

LOUISIANA JURISPRUDENCE
Counsel have referred us to only two cases which have approached wrongful life and wrongful birth actions. In Yasar v. Cohen, 483 So.2d 1099 (La.App. 4th Cir. 1986) the court avoided the major issue of a wrongful birth action. The plaintiffs, husband and wife, alleged that the defendant doctor negligently inserted an intrauterine device. As a result the plaintiff-wife gave birth to an unplanned, but healthy child. The court of appeal noted that the plaintiffs' sought two items of damages: remuneration for plaintiff-wife's injuries and expenses and the costs of rearing an unwanted child. The court ruled "that the allegations of the petition, if proven, will allow plaintiff-wife to recover for her own injuries, expenses, etc. When the petition states a cause of action as to any ground or portion of the demand the exception of no cause of action must be denied." The court then observed that because a cause of action was stated for at least one item of damages sought, it did not have to pass on the right to recover the costs of rearing the child.
The other case cited to us is Doe v. Cronan, 487 So.2d 461 (La.App. 5th Cir. 1986). This was not a malpractice case and was based on the birth of a child born out of wedlock to a sixteen-year-old girl who was allegedly enticed into sexual intercourse by the father of the child, a nineteen-year-old boy. In a sense the case might be viewed as a wrongful life action and a wrongful birth action as it was brought by the grandmother on her own behalf, on behalf of her teenage daughter (the mother) and on behalf of the child. The court of appeal affirmed a motion for summary judgment on behalf of the teenage father, his father and the latter's insurer. The court of appeal observed:
"On appeal, plaintiffs concede that as yet neither Louisiana's statutes nor its jurisprudence permit such suits; instead, general tort principles apply and that this action should be sustained.
* * * * * *
*1023 "This State does require fathers of illegitimate children to provide financial support but the instant suit does not seek such relief. Plaintiffs ask for damages for mental anguish, embarrassment, humilitation, pain and suffering, loss of earning capacity, medical expenses, etc.
"Inasmuch as Louisiana has not recognized such tort claims, we cannot say that the trial judge erred in granting summary judgment. The authority for lawsuits such as this must come from either the legislature or this State's Supreme Court.
"We affirm, with appellants to pay costs." 487 So.2d at 462.
In our view, despite the similarities of the Yasar and Doe cases to the actions before us, they are not sufficiently similar to provide a precedent. There are no Louisiana statutory or jurisprudential rules to guide us. We approach our two actions as matters of first impression.

JURISPRUDENCE IN OTHER JURISDICTIONS
We have given thoughtful consideration to the development of the common-law actions of wrongful life and wrongful birth, and aspects of the latter sometimes referred to as wrongful conception or wrongful pregnancy. An excellent brief summary of the subject is set forth in Prosser and Keeton on the Law of Torts (5th ed. 1984), Chapter 9 on pages 370-373 which we quote here with citations omitted unless otherwise supplied:
"Unwanted Children`Wrongful Birth', `Wrongful Life' and `Wrongful Pregnancy'
"The last couple of decades have witnessed the rapid development of tort claims concerning a variety of issues that arise when the tortfeasor's act or omission results in the birth of an unwanted child. The defendants in these cases are typically doctors charged with negligence in failing directly to prevent the conception or birth of the child, as by negligently performing a sterilization or abortion procedure, or in failing to diagnose or inform the parents that the child might be born deformedbecause of a disease contracted by the mother or a genetic condition in one of the parentsin time to permit the termination of the pregnancy. These actions are now generally referred to as `wrongful birth' claims, when brought by the parents for their own damages, and `wrongful life' claims, when brought by or on behalf of the child for the harm of being born deformed.
"Following a couple of wrongful life cases denying recovery to children born into a state of illegitimacy in the early and mid-1960s, New Jersey in 1967 handed down Gleitman v. Cosgrove, [49 N.J. 22, 227 A.2d 689 (1967)] which was destined to become the fountainhead for debate in this country in cases of this type. The Gleitman court denied recovery, to both the child and the parents, for birth defects that resulted when the mother contracted German measles during, her early pregnancy. Claiming that the defendant doctor had negligently assured her that the disease would not affect the child, the mother asserted that she might have secured an abortion had the defendant informed her of the risk of birth defects from the disease. Troubled by the philosophical difficulties of allowing the child to claim that he never should have been born at all, together with the logical and practical difficulties of calculating damages for such `harm,' the court denied the child's wrongful life claim: "The infant plaintiff would have us measure the difference between his life with defects against the utter void of nonexistence, but it is impossible to make such a determination.'" Because of similar difficulties in weighing the resulting emotional and financial burdens to the parents against the `unmeasurable, and complex human benefits of motherhood and fatherhood,' coupled with a reluctance to sanction abortion by allowing a cause of action to be predicated upon the deprivation of `the opportunity to terminate the existence of a defective child in embryo,' the court further denied the parents' claim for wrongful birth.

*1024 "With the exception of three lower court decisions subsequently nullified by the high courts of New York and California, and a close call in Pennsylvania," all jurisdictions that have ruled on the issue now follow Gleitman in denying the child a wrongful life cause of action for general damages for the suffering of being born in an impaired condition. On the other hand, most courts subsequent to Gleitman have been more receptive to the parents' wrongful birth claims, after the Supreme Court's legalization of abortion in 1973, and there is by now quite general agreement that the parents should be permitted to recover at least their pecuniary losses, and perhaps damages for emotional distress as well." Even New Jersey has recanted, if in backward order, first by allowing the parents' claim for emotional distress, and later for the pecuniary losses attributable to the child's impaired condition.
"Due in part to the increasing prevalence of sterilization among both men and women, and the general availability of abortions, a growing number of `wrongful conception' or `wrongful pregnancy' cases are being brought against doctors and others for tortiously failing to prevent the birth of a healthy, but unwanted, child. The early decisions denied recovery to the parents in these cases, reasoning that the benefits from having a healthy child outweighed any detriments, as a matter of law. While there is some scant continued support for this view, the great majority of courts today allow the parents to recover, but not the child, even if he is born illegitimate. Yet the question of how the parents' damages should be determined has become pregnant with controversy. While the courts are now in general agreement that the costs, expenses and pain directly attributable to the pregnancy and childbirth should be recoverable, the question of whether to allow child rearing expenses remains an issue of fertile debate. A majority of courts have refused to allow any damages for the costs of raising a normal child, and this position has much in logic and philosophy to support it. A growing number of jurisdictions, however, permit the recovery of child-rearing expenses, but generally require that such damages be reduced, under a sometimes strained interpretation of the `benefit rule,' by the accompanying financial and emotional benefits that may be expected to accrue to the parents in raising a healthy child. The cases and commentary concerning the law of prenatal torts is mounting rapidly, and the doctrine in this area will remain in ferment for at least some time."
In addition to the quoted discussion by Prosser and Keeton, the subject matter is discussed at length in various articles and cases from other states.[2] We have read these various authorities, but they are neither determinative of nor controlling in the decision reached by this court in the factual situation presented in this case.

THE WRONGFUL LIFE CLAIM
Tammy and Dwain Pitre, on behalf of Hannah Pitre, seek damages for the wrongful life of Hannah Pitre. The basis of this claim, as we perceive it, is that Hannah's damage was her birth and that but for her birth she would not have to suffer a life afflicted with albinism. In order for this court to determine that Hannah has been damaged by her very birth, we must in essence say that it would have been better had she not been born at all. We cannot say that Hannah has been damaged *1025 by the accident of her birth and thus cannot award damages for that fact. To conclude otherwise the courts of this state have to find a protected interest in not being born at all if the quality of life to which one is born is not ideal. While not deferring to any authorities from other states, we do note that actions for wrongful life have not been recognized in other jurisdictions except in isolated instances. The right to recover such damages as alleged by the plaintiffs has apparently not been considered by any other court in this state. We conclude and so hold that the so-called action for wrongful life does not exist in Louisiana and the claim asserted on behalf of Hannah Pitre fails to state a cause of action.
In our view, the question is a matter of public policy. While courts routinely attempt to resolve public policy issues, some issues are clearly more appropriate for legislative consideration than judicial treatment. If judicial venture into the field in question is to be made, it should be made by the Supreme Court of Louisiana.

THE WRONGFUL CONCEPTION CLAIM
Within existing concepts of Louisiana tort law we easily find that the defendant physicians and hospital, if found guilty of malpractice as alleged, must respond in damages for expenses incurred as a result of the pregnancy and delivery or birth. Beyond this, less clear issues are presented by the damages claimed by the parents arising thereafter because of the birth of the child the plaintiffs-parents preferred not to have.
The additional claims of the parents include a general demand for emotional and mental distress, past, present and future. They ask for the costs of rearing the child, special expenses for the child's deformity, expenses for the change in family status, and money to replenish the family exchequer so that Hannah's needs will not deprive the other members of the family. Tammy Pitre also seeks damages for her physical pain and suffering and Dwain Pitre seeks damages for loss of consortium, service and society.
In our approach to the parents' additional claims, the question of Hannah's albinism is not a determinative point. If the parents have a cause of action for those damages, Hannah's albinism is pertinent only to the question or extent of damages to be recognized. This reasoning rests on the fact that the existence of a cause of action vel non is the same as it would be if Hannah were born healthy and without her physical disability. The birth of an unwanted healthy child would occasion some of the same damage claims (beyond costs of pregnancy and delivery) as would result from the birth of an afflicted child. In this case, the desire of Tammy and Dwain Pitre not to have more children was motivated by economical considerations. A failure of Dr. Kempf's surgical procedure to prevent conception of an additional child would create economic problems, such as they sought to avoid, even had a healthy child been born.
Under the reasoning traced above, the threshold question to be resolved is whether the birth of a child in a healthy condition, despite the efforts of a surgeon to perform a procedure to prevent conception, gives rise to a cause of action for damages beyond the costs of pregnancy and delivery. We should note here that there is no allegation or suggestion that the defendant's alleged malpractice in any way caused Hannah's albinism. It simply failed to prevent conception.
We have already stated above that in our opinion Dr. Kempf (and any other responsible party) should respond in damages to Tammy and Dwain Pitre if Hannah's conception resulted from malpractice to the extent of the expenses arising out of the pregnancy and delivery. These are nonmedical damages. Eliminating from consideration any special damages such as aggravation caused by Hannah's albinism, the damage claims of Tammy and Dwain Pitre may be summarized as follows:
1. Emotional and mental distress (past, present and future) occasioned by the unexpected *1026 conception and birth of an unwanted child.
2. The cost of rearing a child which plaintiffs sought to avoid through Dr. Kempf's surgical services.
3. The enlargement of family responsibilities as parents.
4. The diminished ability and capability to devote time to the rearing of the two children plaintiffs already had at the time Dr. Kempf performed the tubal ligation surgery.
In essence our inquiry is whether the four interests of the plaintiffs listed above are interests protected by law. We conclude that such interests are not protected by Louisiana law. If the petition allegations are correct, it is true that the efforts of defendants failed to fulfill plaintiffs' attempts to avoid the four consequences listed above. Nevertheless, prevention of pregnancy has not to our knowledge ever received the outright attention of the policy-making branches of the government of the state. Also, we know of no public attention which has been given to support the private desires of cohabiting persons not to generate offspring. Biologically, cohabitation and sexual union are expected to produce children. The desires in given cases not to have additional children, or any children for that matter, may be understandable in some instances. Nevertheless, as we perceive the present attitude of the citizenry of this state, we see no public concern for the private efforts of cohabiting partners to prevent the conception of children. As we view the public will, it has expressed no interest in the question. For these reasons we find no legally protected interests involved as to the four interests referred to above.
We find it too much, at this stage of the general public viewpoint, for us to say that the policy of preventing procreation by surgical intervention should be a protected interest. Until the progress of medical technology, no relatively certain means of prevention existed, and even now application of some measures of medical technology may fail without anyone being guilty of malpractice. All through history the accepted mores of virtually all societies (leaving religious concepts aside) have included the concept that a function of marriage is the production of offspring and their rearing. Until any substantial manifestation of contrary thoughts emerge within our changing society, we decline to extend the policy of the law to the prevention of conception.
We do not by this discussion intend to pass judgment upon the decisions of persons such as plaintiffs to put an end to childbearing or even to prevent it from ever occurring. We simply hold that, if such parties seek the aid of medical specialists and providers of medical services, failure to prevent conception through negligence or malpractice shall not give rise to a cause of action for certain damages as discussed herein.
In the dichotomy which we have made holding that there may be recovery for expenses of pregnancy and delivery but not for other alleged damageswe have in essence held that parents have a protected interest in not incurring the medical expenses resulting from conception, but as yet there is no protected interest in attempts to avoid becoming parents of a child; or in not incurring the expenses of rearing a child; or avoiding any of the other consequences of parenthood alleged by plaintiffs to constitute an injury. Becoming parents of a child has not, as we perceive it, come to be regarded as a harm in the tort sense. Tort deals with the subject of risks protected from harm.
Where the legislature has not acted to designate or identify protected risks, it is the duty of the courts to do so. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). As observed in the Hill case in the quotation from Professor Wex Malone, all rules of conduct (in the negligence context) must have a purpose. Malone stated: "They (the rules) are designed to protect some persons under some circumstances against some rules. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in the injury." See *1027 Malone, Ruminations on Cause-In-Fact, 9 Stan.L.Rev. 60, 73 (1956), reprinted in Wex S. Malone, Essays on Torts, Paul M. Hebert Law Center, Louisiana State University, Baton Rouge, Louisiana, 1986.
That there must be a protected interest before negligence liability comes into play is perhaps basic. It involves duty-risk considerations. For these considerations see McNamara, The Duties and Risks of the Duty Risk Analysis, 44 La.L.Rev. 1227 (1984); Malone, Ruminations on Dixie Drive It Yourself v. American Beverage Company, 30 La.L.Rev. 363 (1970); Stone, Louisiana Civil Law Treatise, Vol. 12, Tort Doctrine (1977). What shall and shall not be a protected interest changes with the times and conforms to societal views at a given time. PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984) and Entrevia v. Hood, 427 So.2d 1146 (La. 1983). See Stone, supra, Sections 268 and 271. Consider also Prosser and Keeton on the Law of Torts, supra, under the subject of "Policy and Process," pages 15-29.

MOTIONS TO STRIKE; FOR PARTIAL SUMMARY JUDGMENT AND EXCEPTION OF NO CAUSE OF ACTION
Because of the views expressed above, we reverse in part the trial court's rulings concerning Dr. Kempf.
With respect to the action for wrongful life asserted by plaintiffs on behalf of their minor daughter, Hannah Pitre, the trial court erred and the exception of no cause of action filed as to her separate action should have been sustained. Accordingly, the judgment of the trial court overruling the exception of no cause of action as to Hannah Pitre's action asserted through her parents will be reversed; it will be sustained and Hannah Pitre's action will be dismissed at plaintiffs' costs.
The action on behalf of plaintiffs, Tammy Dupre Pitre and Dwain P. Pitre, against Dr. Kempf and his responses present three procedural matters: (1) Dr. Kempf's exception of no cause of action; (2) Dr. Kempf's motion to strike from the petition any allegations relating to the wrongful life action of Hannah Pitre and certain damages Tammy and Dwain Pitre allegedly sustained individually; and (3) Dr. Kempf's motion for the partial summary judgment. The trial court erred in completely denying the exception and motions.
Insofar as Dr. Kempf's motion for summary judgment may relate to Hannah Pitre's action as such, we have already disposed of the issue by sustaining Dr. Kempf's exception of no cause of action as to that action in its entirety. We are left with the action of Tammy and Dwain Pitre for wrongful "conception or birth." Dr. Kempf's exception and motions all attack the same thing. Because we recognize a right by plaintiffs to seek some types of the damages described in the petition, we must tailor our ruling accordingly. The trial court applied the well established rule of Yasar v. Cohen, supra, to the effect that when a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be denied. See Rodriguez v. American Bankers Insurance Company of Fla., 386 So.2d 652, 653 (La.1980). Therefore, the trial court disposed of the exception on procedural rather than substantive grounds. We recognize the rule as the general rule.
In this case we will follow the resolution made by this court in Lanham v. Woodward, Wight & Co., Ltd., 386 So.2d 131 (La.App. 3d Cir.1980), writ ref., 392 So.2d 668 (La.1980). That case presented the situation in which a husband of an injured wife made a claim for his own emotional injury because of his wife's physical injury and for economic losses. The court held that emotional damages resulting from injury to a third party did not give rise to a cause of action. The court found improper an exception of no cause of action as to the husband as it would amount to a partial no cause of action which is not permitted by our law. However, this court did find that the proper procedural vehicle to question the right to the non-cognizable elements of damages was the motion to strike. See also Adams v. N.O. Blood Bank, Inc., 343 So.2d 363 (La.App. 4th Cir.1977).
*1028 Following the course of the Lanham case we hold it would be improper to sustain Dr. Kempf's exception of no cause of action as to the action of Tammy and Dwain Pitre. However, we will order stricken those allegations which, for our reasons given above, are inappropriate.
Paragraphs 9 and 12 should be stricken in their entirety, the latter paragraph has no pertinence since we hold that Hannah Pitre has no cause of action on her own behalf.
As to paragraphs 10 and 11 we quote them in full below and underscore those portions which we order stricken from the petition.
"10.
"TAMMY D. PITRE, individually, seeks damages for the wrongful conception of the child; expenses incurred during pregnancy and delivery; economic costs of rearing an unplanned and unwanted child; special expenses regarding the child's deformity; expenses for the change in family status, including extra money to compensate for the fact that she must spread her society, comfort, care, protection and support over a larger group; money to replenish the family exchequer so that HANNAH PITRE will not deprive other members of the family; additionally, TAMMY D. PITRE, individually, seeks damages for past, present and future emotional and mental distress and physical pain and suffering.

"11.
"DWAIN P. PITRE, individually, seeks damages for loss of consortium, service and society; economic costs of rearing an unplanned and unwanted child; expenses incurred during pregnancy, delivery and post-delivery; expenses for change in family status; special expenses regarding the child's deformity; and emotional and mental distress, past, present and future."

With respect to Dr. Kempf's motion for partial summary judgment, what we have said largely takes care of this motion. The case will be remanded for trial of the claims which we hold set forth a cause of action, and this excludes Hannah Pitre's claim altogether. Hence, it is not necessary that we rule on this motion for partial summary judgment.
For the foregoing reasons the trial court's judgment is sustained in part and reversed in part and the case is remanded to the trial court for further proceedings to be governed by the expressions and holdings set forth in this opinion.
More specifically:
1. The judgment of the trial court overruling the exception of no cause of action filed by Dr. John Kempf with reference to the action of plaintiffs brought on behalf of their minor child, Hannah Pitre is reversed; the exception of no cause of action as to the representative action on behalf of Hannah Pitre is hereby sustained and that action as to Dr. Kempf is dismissed at plaintiffs' costs.
2. The judgment of the trial court overruling the exception of no cause of action filed by Tammy Dupre Pitre and Dwain P. Pitre individually and in their own behalf is sustained on the technical grounds referred to above.
3. The judgment of the trial court denying Dr. Kempf's motion to strike is reversed. It is now ordered, adjudged and decreed that paragraphs 9 and 12 in their entirety and those underscored portions of paragraphs 10 and 11 quoted in the body of this opinion be and they are hereby stricken from the petition and shall form no part of plaintiffs' claims in this action. As noted above, this case is remanded to the trial court for further proceedings herein.
The costs of the proceedings in this court, and in the trial court, insofar as they relate to the matters dealt with herein, are assessed to the plaintiffs, Tammy Dupre Pitre and Dwain P. Pitre.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
KNOLL, J., dissents and assigned reasons.
*1029 KING, J., concurs in part and dissents in part for written reasons assigned.
KNOLL, Judge, dissenting.
I respectfully dissent. In my view the allegations for damages for an unplanned pregnancy and child based on medical malpractice are not subject to a motion to strike. Further, I find that Civil Code Article 2315 covers damages of this nature in Louisiana and the benefits rule found in Restatement (Second) Of Torts § 920 (1979), that other jurisdictions apply, would be applicable in mitigating any damages. See Fassoulas v. Ramey, 450 So.2d 822 (Fla.1984).
KING, Judge, concurring in part and dissenting in part.
I respectfully concur in part and dissent in part from the decision of the majority.
I agree with the majority that the suit brought on behalf of Hanna Pitre by her parents for alleged damages resulting from her birth, a so-called "wrongful life claim," sets forth no cause of action as there is no Louisiana statute or jurisprudence protecting or creating the legal right for a person not to be born at all. I further agree that a Motion to Strike is a proper procedural device to remove such a claim from a petition that sets forth other valid causes of action.
I respectfully dissent from the decision of the majority finding that the suit brought by Tammy and DeWayne Pitre, individually, for damages which they each allege they suffered as the result of Hanna Pitre's conception and birth, a so-called "wrongful conception claim," "wrongful pregnancy claim," or "wrongful birth claim," sets forth no cause of action because their claim is not legally protected.
La.C.C. Articles 2315 and 2316, well recognized laws of this state, permit recovery of the damages sought by the Pitres in this suit and legally protect their claims for damages. These codal articles are the foundation of tort principles in Louisiana and have long been recognized and well accepted in their application.
The real issue in this case is the extent to which the defendant is civilly liable for the consequences of his negligence. Plaintiffs seek damages for the direct, forseeable and natural consequences of the burdens which the defendant's alleged negligence has forced upon them and which they sought, and had a legal right, to avoid by seeking sterilization.
The reasoning of the majority would insulate and protect a negligent tortfeasor, such as the defendant is alleged to be, from ever being held accountable for the damages he has caused. I believe the majority has mistakenly confused the risk which is not protected, the consequences of parenthood, with the risk that is protected, the consequences of a negligent act.
Plaintiff's purpose in obtaining the defendant's professional services as a physician was to prevent conception or the birth of an unwanted child. Louisiana Civil Code Articles 2315 and 2316 permit a defendant to be held legally responsible for the reasonably foreseeable consequences which occur because of his alleged negligence. Certainly it was foreseeable that the Pitres would have emotional and mental distress if the very thing they actively sought to prevent in fact occurred. Certainly it was reasonably foreseeable that the Pitres would incur expenses in raising a child, whose birth they sought to prevent, irrespective of whether or not the child was born healthy. The fact that the child was born unhealthy only increases the plaintiffs' emotional and mental distress and their expenses of raising the child. I question the logic of some legal pronouncements that parents are overwhelmingly benefited by the birth of an unplanned child, whose birth they actively sought to prevent, even if the birth results in a normal, healthy child, because the intangible and all-important "benefits" of parenthood far outweigh any of the monetary burdens involved. I believe such "benefits" of parenthood, where an unwanted child is born because of a defendant's negligence, should only be used to reduce or mitigate the amount of damages sustained. See Restatement (2d) of Torts, § 920 (1979);
*1030 Note, Wrongful Conception: Who Pays For Bringing Up Baby?, 47 Fordham L.Rev. 418. For these reasons I believe that the Pitres' petition states a cause of action as to their claimed damages.
For these reasons I respectfully concur in part and dissent in part from the decision of the majority.
NOTES
[1] The allegations of the petition named Dr. McCarthy as a defendant, but the plaintiffs' prayer asserts no demand against him. Moreover, the information for service appended to the petition requested that service on Dr. McCarthy be withheld. In any event, he is not before this Court of Appeal at this juncture as a party because the writ application was granted to Dr. Kempf, the only party to apply for a writ.
[2] Azzolino v. Dingfelder, 315 N.C. 103, 337 S.E. 2d 528 (1985); Goldberg v. Ruskin, 113 Ill.2d 482, 101 Ill.Dec. 818, 499 N.E.2d 406 (1986); Elliott v. Brown, 361 So.2d 546 (Ala. 1978); Nelson v. Krusen, 678 S.W.2d 918 (Tex.1984); Weintraub v. Brown, 98 A.D.2d 339, 470 N.Y.S.2d 634 (App.Div.2d 1983); Sherlock v. Stillwater, 260 N.W.2d 169 (Minn.1977); LaPoint v. Shirley, 409 F.Supp. 118 (W.D.Tex.1976); Hartke v. McKelway, 707 F.2d 1544 (D.C.Cir.1983); Recovery for Wrongful Conception: Who Gets the Benefit The Parents or the Public, 14 New England L.Rev. 784 (Spring 1979); Goldstein and Hirsch Wrongful Life, 29 Med.T.Tech.Q. 279 (Fall 1982); Wilmoth, Wrongful Life and Wrongful Birth Causes of Action, 63 Marq.L.Rev. 611 (Summer 1980).