RINARD v BICZAK

Docket No. 101702. Submitted October 5, 1988, at Grand Rapids. Decided June 5, 1989. Leave to appeal applied for.

Plaintiffs, Gordon and Stephanie Rinard and their minor daughter, Christine Rinard, brought a medical malpractice action in the Muskegon Circuit Court against Alan J. Biczak, D.O., seeking damages for the costs of raising Christine's child, which Gordon and Stephanie Rinard adopted, based upon the allegation that defendant negligently failed to diagnose Christine's pregnancy. Christine's claim was dismissed prior to trial on motion of her counsel. The jury awarded damages to the plaintiffs for the costs of raising the normal, healthy child and the trial court, R. Max Daniels, J., entered a judgment consistent with the verdict. Defendant appealed.

The Court of Appeals held:

1. A cause of action can be maintained for failure to diagnose pregnancy.

2. The "benefits rule" should not be used to determine damages in this type of case.

3. The benefits of raising a normal, healthy child must be conclusively presumed to be greater than the costs of raising that child. As a matter of public policy, parents should not be able to recover the costs of raising a normal, healthy child as an element of damages. The parents' recovery for a physician's failure to diagnose pregnancy is limited to the costs of the pregnancy and birth, and related damages for pain and suffering, medical complications caused by the pregnancy, mental distress, lost wages, and loss of consortium. These damages should not be offset with what the factfinder speculates to be the benefits of the child.

4. The plaintiffs in this action, the child's grandparents and

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 278, 367-371.

Physician's or surgeon's liability for injury to mother in pregnancy and childbirth cases. 99 ALR2d 1336.

Malpractice: diagnosis and treatment of conditions of female sexual organs. 93 ALR2d 313.

the adoptive parents, may not recover the child-rearing costs as an element of damages for the same reason that the child's parents may not recover those costs.

Reversed.

HOOD, J., dissented. He agrees that a cause of action can be maintained for failure to diagnose Christine's pregnancy. However, he would find on the facts of this case that the plaintiff grandparents can recover child-rearing costs and that their damages are not precluded as a matter of law but are to be determined by the trier of fact. He would find that the doctor-patient relationship between defendant and Christine supplies the special relationship for plaintiffs' cause of action against defendant and that it was foreseeable that defendant's failure to diagnose the pregnancy could result in the plaintiffs' having to provide for the child. He would find no policy reason which would preclude recovery. He would not find that the plaintiffs are precluded from receiving damages because they voluntarily assumed legal responsibility through adoption. He would follow the "benefits rule" in determining the amount of damages in this case. He would find that the trial court properly refused to give certain requested nonstandard jury instructions and did not err in admitting certain evidence over defendant's objection. He would also find that defendant's post-trial motions for summary disposition, judgment notwithstanding the verdict and a new trial were properly denied. He would affirm the jury verdict for plaintiffs.

1. PHYSICIANS AND SURGEONS — MALPRACTICE — FAILURE TO DIAGNOSE PREGNANCY.

A cause of action can be maintained for failure to diagnose pregnancy.

2. DAMAGES — PHYSICIANS AND SURGEONS — FAILURE TO DIAGNOSE PREGNANCY.

The benefits of raising a normal, healthy child must be conclusively presumed to be greater than the costs of raising that child; parents may not, as a matter of public policy, recover the costs of raising a normal, healthy child as an element of damages in a medical malpractice suit alleging failure to diagnose pregnancy; recovery in such a suit is limited to the costs of pregnancy and birth, and related damages for pain and suffering, medical complications caused by the pregnancy, mental distress, lost wages, and loss of consortium; these damages should not be offset with what the factfinder speculates to be the benefits of a child.

*Landman, Latimer, Clink & Robb* (by *Steven C. Kohl* and *Bennett C. Rosene*), for plaintiffs.

*Bremer, Wade, Nelson & Alt* (by *Michael D. Wade* and *Phillip J. Nelson*), for defendant.

Before: DANHOF, C.J., and HOOD and R. L. OLZARK,* JJ.

DANHOF, C.J. Defendant appeals as of right from a Muskegon Circuit Court jury verdict which awarded damages to plaintiffs Gordon and Stephanie Rinard for the costs of raising their daughter Christine's child, which they adopted. We reverse.

In May of 1983, Stephanie Rinard took fifteen-year-old Christine to see defendant because she discovered that Christine was sexually active. Christine was not pregnant at this time. On December 5, 1983, Christine was again taken to defendant who examined her regarding her possible pregnancy. Christine replied negatively when defendant asked her if she had engaged in sexual intercourse since the last time that he saw her. Actually, she had been having sexual relations with her stepbrother. Defendant incorrectly concluded that Christine was not pregnant at this time. On July 9, 1984, Christine gave birth to a normal, healthy baby which Gordon and Stephanie Rinard adopted.

Plaintiffs Gordon, Stephanie and Christine Rinard brought this medical malpractice action against defendant based on his failure to diagnose Christine's pregnancy in December of 1983. Christine's claim was dismissed with prejudice on motion of her own counsel prior to trial. Plaintiffs testified that Christine probably would have had an abortion if defendant had informed them that

* Circuit judge, sitting on the Court of Appeals by assignment.

she was pregnant in December of 1983. The jury awarded damages to Gordon and Stephanie Rinard for the costs of raising the child. The lower court denied defendant's post-trial motions.

We conclude that the child's mother was the only plaintiff who could have properly brought a cause of action based on defendant's failure to diagnose her pregnancy. She could have recovered the costs of pregnancy and birth, and related damages, but not the costs of raising the child. The mother's parents could not maintain this cause of action for the costs of raising their daughter's child, whom they adopted. Nobody, including natural and adoptive parents, can recover the costs of raising a normal, healthy child because those costs are outweighed by the benefits of that child's life.

We resolve the primary issues in this case by addressing three questions: (1) Can a cause of action be maintained in Michigan for failure to diagnose pregnancy? (2) What recovery is available based on this cause of action? and (3) Can the child's grandparents, who are also the adoptive parents in this case, bring this cause of action?

A cause of action can be maintained in Michigan for failure to diagnose pregnancy. In *Proffitt v Bartolo,* 162 Mich App 35, 46-47; 412 NW2d 232 (1987), lv den 430 Mich 860 (1988), this Court stated that as long as abortion remains an option allowed by law, physicians owe a duty to furnish patients with adequate information for them to be able to decide whether to choose that course of action. *Proffitt* was a wrongful birth case. The term "wrongful birth" is a shorthand name given to actions brought by the parents of a child born with severe defects against a physician, or other responsible party, who negligently fails to inform them in a timely fashion of the risk that the mother will give birth to such a child, effectively

precluding an informed decision as to whether the pregnancy should be avoided or terminated. 162 Mich App 40. The instant case does not involve a wrongful birth cause of action. However, the claim asserted in this case is more analogous to that cause of action than to other causes of action such as wrongful life or wrongful pregnancy which Michigan courts have addressed. See *Proffitt, supra,* pp 40-41. This Court impliedly recognized a cause of action for failure to diagnose pregnancy in *Clapham v Yanga,* 102 Mich App 47; 300 NW2d 727 (1980), lv gtd 412 Mich 889 (1981), dis by stipulation 412 Mich 889 (1982). Our Supreme Court granted leave to appeal in that case and directed the parties to brief the issues of whether the defendant should be liable for damages for failure to diagnose pregnancy and, if so, how the damages should be measured. The appeal was dismissed upon stipulation by the parties.

We turn to the question of what recovery is available based on a cause of action for wrongful failure to diagnose pregnancy. The lower court instructed the jury to determine damages by applying the "benefits rule" which was set forth in *Troppi v Scarf,* 31 Mich App 240; 187 NW2d 511 (1971), lv den 385 Mich 753 (1971). Michigan courts have applied the benefits rule on numerous occasions. However, for the reasons set forth below, we conclude that the benefits rule should not be used to determine damages in this type of case.

Under the benefits rule, the trier of fact determines the amount of damages to be awarded by evaluating the benefits of having the child according to the circumstances of the case and subtracting the dollar value of those benefits from the dollar value of the injury to the plaintiff caused by the defendant's tortious conduct. *Troppi, supra,* pp 254-257. In *Troppi,* the defendant pharmacist neg-

ligently failed to fill a woman's prescription for birth control pills, resulting in the birth of a normal, healthy child. Under *Troppi,* the costs of raising a normal, healthy, but unwanted, child, is an element of gross damages. 31 Mich App 261. See also *Green v Sudakin,* 81 Mich App 545, 547; 265 NW2d 411 (1978), lv den 403 Mich 855 (1978). The *Troppi* Court noted that, in the great majority of cases, the birth of a healthy child confers so substantial a benefit as to outweigh the expenses of his or her birth and support. However, the Court felt that it could not say, as a matter of law, that a healthy child always confers such an overriding benefit. *Troppi, supra,* p 254.

Michigan is among the minority of states which allow the recovery of the costs of raising a child as an element of damages, offset by the benefits received by the parents from the parent-child relationship. In a substantially greater number of jurisdictions, courts have denied the recovery of child-rearing costs. See *Morris v Sanchez,* 746 P2d 184, 186-187 (Okla, 1987); *Cockrum v Baumgartner,* 95 Ill 2d 193, 197; 69 Ill Dec 168; 447 NE2d 385, 387-388 (1983), cert den 464 US 846; 104 S Ct 149; 78 L Ed 2d 139 (1983), and cases cited therein.

Courts have not allowed the recovery of the costs of raising a normal, healthy child as an element of damages for many reasons. *Morris, supra,* pp 187-188; *Cockrum, supra,* pp 198-199. We consider the best reason to be that the costs of raising such a child are outweighed by the value of that child's life. In *Rohm v Stroud,* 386 Mich 693, 696; 194 NW2d 307 (1972), our Supreme Court stated that the value of a minor child's services to a parent is at least as great as the amount expended by the parent on the child's support, maintenance and education. In that wrongful death case, our Supreme Court further stated that par-

ents are at least entitled to the presumption that a child is worth his keep, and the negligent act which snuffs out their child's life deprives them of services at least equal to the amount of their pecuniary outlay. 386 Mich 697.

The instant case does not involve a wrongful death claim. However, allowing the costs of raising a child as an element of damages logically requires the conclusion that the nonexistence of that child would be a benefit. *Morris, supra,* p 188. We agree with the reasoning of the Illinois Court of Appeals which stated:

> The existence of a normal, healthy life is an esteemed right under our laws, rather than a compensable wrong. [*Wilczynski v Goodman,* 73 Ill App 3d 51, 62; 29 Ill Dec 216; 391 NE2d 479, 487 (1979).

In a proper hierarchy of values, the benefit of life should not be outweighed by the expense of supporting it. *Cockrum, supra,* p 201. A court " 'has no business declaring that among the living are people who never should have been born.' " *Proffitt, supra,* p 51, quoting *Smith v Cote,* 128 NH 231, 249; 513 A2d 341, 353 (1986).

Another reason for not allowing the recovery of child-rearing costs as an element of damages is that, to maximize their recovery under the benefits rule, parents must demonstrate that they did not want their child and that the child is of minimal value to them. Michigan should not allow " 'the unseemly spectacle of parents disparaging the "value" of their children or the degree of their affection for them in open court.' " *Cockrum, supra,* p 202, quoting *Public Health Trust v Brown,* 388 So 2d 1084, 1086, n 4 (Fla App, 1980). A related concern is for the child who may learn

that his parents did not want him to exist and sued to have the person who made his existence possible provide for his support. *Wilbur v Kerr,* 275 Ark 239, 242-244; 628 SW2d 568, 570-571 (1982).

We do not dispute the fact that child rearing is a costly enterprise. We simply believe that the benefits of raising a normal, healthy child must be conclusively presumed to be greater than the costs of raising that child. As a matter of public policy, parents should not be able to recover the costs of raising a normal, healthy child as an element of damages. We would limit the parents' recovery for a physician's failure to diagnose pregnancy to the costs of pregnancy and birth, and related damages for pain and suffering, medical complications caused by the pregnancy, mental distress, lost wages, and loss of consortium. See *Wilczynski, supra,* p 63. These damages should not be offset with what the factfinder speculates to be the benefits of a child. The benefits rule should not be used to measure damages in this type of case.

We turn to the question of whether the child's grandparents, who are also the adoptive parents in this case, can bring this cause of action. They should not be able to recover child-rearing costs as an element of damages for the same reasons that the child's parents should not be able to recover those costs. Plaintiffs' reliance on cases which have extended a physician's duty to third parties is misplaced. Regardless of the existence of a special relationship and the foreseeability that the doctor's failure to diagnose the pregnancy would result in someone's having to provide for the child, the grandparents should not be able to recover damages because the benefits that they gain from raising the child outweigh the child-rearing costs. Further, making a defendant doctor liable to peo-

ple who voluntarily choose to raise a child, based on a determination that their choice was foreseeable, opens the door to claims in future cases by relatives or other people who could argue that they were foreseeable adoptive parents. There are many potential parents who would gladly adopt a normal, healthy child and not claim that they are injured because they must raise that child. Grandparents should not be allowed to adopt a cause of action by adopting their daughter's child.

In *Clapham, supra,* a panel of this Court set forth the proposition that the only person who would profit from a holding that the grandparents are not entitled to damages would be the defendant doctor who would escape the consequences of his own negligence. 102 Mich App 60. We disagree. The appropriate consequences for a doctor who negligently fails to diagnose a pregnancy resulting in a normal, healthy child are to pay for the costs of pregnancy and birth, and related damages. The *Clapham* Court set forth the above-described proposition after explaining that guardianship with the grandparents was in the best interests of the child in that case. 102 Mich App 59-60. We recognize that in some cases such as *Clapham,* which involved an older child and different circumstances, adoption by the grandparents might be in the child's best interests. However, the instant case involves a young child who will grow up in a household where her adoptive parents' children are her natural parents. We question whether this situation is really in the child's best interests.

Our decision that this case must be reversed makes it unnecessary for us to address defendant's remaining claims concerning jury instructions and the admission of evidence.

We recognize that portions of this opinion could be interpreted as being contrary to portions of this

Court's opinions in cases such as *Proffitt, supra,*
and *Eisbrenner v Stanley,* 106 Mich App 357; 308
NW2d 209 (1981), lv den 414 Mich 875 (1982). Both
*Proffitt and Eisbrenner* allowed wrongful birth
causes of action for children who were born with
severe birth defects. We will continue to allow
parents who successfully maintain a wrongful
birth cause of action to recover for their extraordi-
nary medical expenses and the extraordinary costs
of raising the child, as well as the emotional harm
they have suffered. *Proffitt, supra,* p 46. If changes
are to be made in this area of the law, then they
should be made by the Legislature or our Supreme
Court. *Proffitt, supra,* pp 58-59. We question
whether the benefits rule should ever be used
when it requires that a value be placed on human
life.[1] We invite our Supreme Court to grant leave
to resolve the issues raised in this case.

Reversed.

R.L. Olzark, J., concurred.

Hood, J. *(dissenting).* I agree that a cause of
action can be maintained for failure to diagnose
Christine's pregnancy. However, I would also find
on the facts of this case that the grandparents can
recover child-rearing costs and that their damages
are not precluded as a matter of law but are to be
determined by the trier of fact.

In May, 1983, Mrs. Rinard took Christine, who
was then fifteen years old, to see Dr. Biczak. Mrs.
Rinard chose Biczak because he had previously
conducted Mrs. Rinard's yearly physicals. The visit
was prompted when Mrs. Rinard discovered that

---

[1] I no longer maintain the position that the benefits rule should be
used to measure damages in wrongful pregnancy cases. See *Bushman
v Burns Clinic Medical Center, P.C. (After Remand),* 83 Mich App
453; 268 NW2d 683 (1978), lv den 403 Mich 850 (1978) (Danhof, C.J.,
dissenting).

Christine had been sexually active and feared she might be pregnant. The pregnancy tests performed at that time were negative.

Late in November, Mrs. Rinard again called defendant because Christine had not had a period since September 7, 1983. An appointment was made and Mrs. Rinard took Christine to defendant's office on December 5, 1983. At that examination, Biczak questioned Christine concerning whether she had engaged in sexual intercourse since the last appointment. Christine's response was negative. Actually, Christine had been having sexual relations with her stepbrother, but Christine testified that he had never penetrated her and at the time of the examination she believed that there had to be penetration in order for there to be "sexual intercourse."

Biczak concluded that Christine was not pregnant. He believed she was simply going through a phase of irregular menses which is common for teenagers. No pregnancy tests were taken. Christine was in fact pregnant at that time. Mrs. Rinard brought Christine to see Biczak again in April, 1984. Christine again said that she had not had a menstrual period since September, 1983, and that she had not had sexual intercourse since May, 1983. Biczak diagnosed secondary amenorrhea. He reached this conclusion because Christine was having no menstrual periods as opposed to menstrual irregularity and because he had eliminated pregnancy as a source of Christine's problems. Biczak believed that the abdominal bloating Christine was then experiencing was due to gastrointestinal problems.

Mrs. Rinard then decided to take her daughter to a gynecologist who informed Mrs. Rinard that Christine was pregnant. The child was delivered in July, 1984, by emergency Caesarean section be-

cause of a seizure Christine experienced while in labor. The child was born healthy and full term. The Rinards adopted the child in August, 1984.

The complaint alleged that Biczak's negligence in failing to timely diagnose her pregnancy deprived Christine of the opportunity to terminate the unplanned pregnancy. Only the Rinards sought recovery for the expenses incurred for Christine's pregnancy care and for the support and maintenance of the child.

I agree with the majority's holding that a cause of action can be maintained for failure to diagnose Christine's pregnancy. In *Clapham v Yanga*, 102 Mich App 47; 300 NW2d 727 (1980), lv gtd 412 Mich 889 (1981), dis by stipulation 412 Mich 889 (1982), this Court impliedly recognized a cause of action for failure to diagnose a pregnancy. The patient was fourteen years old when her mother took her to the doctor for a medical examination. Both the daughter and the grandparents were awarded damages. This Court did not address the viability of the claim, but decided a damages issue with reference to principles generally applicable in medical malpractice actions.

In arguing that plaintiffs' claim must be denied despite *Clapham*, defendant relies on *Rieck v Medical Protective Co of Fort Wayne, Indiana*, 64 Wis 2d 514; 219 NW2d 242 (1974). In *Rieck*, the Wisconsin Supreme Court held that a complaint alleging that a clinic and an obstetrician failed to determine and timely inform the mother that she was pregnant so that the pregnancy could be terminated did not state a cause of action. The Wisconsin court reasoned that, even where negligence can be established as the cause in fact of certain resulting damages, recovery could be denied on public policy grounds.

Some of the same public policy arguments raised

by the *Rieck* court were considered by this Court in *Troppi v Scarf,* 31 Mich App 240; 187 NW2d 511 (1971), in determining that a pharmacist could be liable for negligently failing to supply a prescribed oral contraceptive. The *Troppi* Court found the birth of a healthy child to be a compensable injury. Since *Troppi,* the Michigan courts have continued to treat other claims involving unplanned births as malpractice claims. *Eisbrenner v Stanley,* 106 Mich App 357; 308 NW2d 209 (1981)(physician's failure to diagnose rubella); *Stephens v Spiwak,* 61 Mich App 647; 233 NW2d 124 (1975)(negligently performed tubal ligation); *Clapham, supra* (misdiagnosis of pregnancy).

Similarly, the only other court which has directly addressed the wrongful diagnosis claim viewed the case basically as one for malpractice in which the person responsible must respond for the resulting damages. *Ziemba v Sternberg,* 45 AD2d 230; 357 NYS2d 265 (1974). See also *Cockrum v Baumgartner,* 95 Ill 2d 193; 447 NE2d 385 (1983), in which the Illinois Supreme Court addressed only the issue of damages, but treated the claim as one for malpractice.

The Michigan cases have continued to follow *Troppi* and to view the unplanned pregnancy or birth claim as a question of the physician's duty to ascertain and advise the parent so that available options can be exercised. In the absence of any directive from the Legislature or the Supreme Court that this type of claim should not be allowed, the wrongful diagnosis claim should also be recognized. See *Proffitt v Bartolo,* 162 Mich App 35, 46; 412 NW2d 232 (1987).

Having determined that this is a viable cause of action, the next question is whether it can be brought by the grandparents of the child. Defendant would preclude plaintiffs from recovery on

the basis that any duty he owed the daughter did not extend to her parents since they were not his patients. He would distinguish *Clapham* and its award to the grandparents because in *Clapham* the natural parent was also a plaintiff.

The extension of the physician's duty to third parties has been recognized in limited situations. In *Duvall v Goldin,* 139 Mich App 342; 362 NW2d 275 (1984), this Court recognized that the plaintiff, injured in an auto accident, could bring a claim against a doctor based on his negligence in treating a patient who caused the accident.

The question is whether the facts establish a relationship between the parties such that the community will impose a legal obligation or duty upon the defendant for the benefit of plaintiffs. *Id.,* p 347. A defendant's special relationship with a nonparty can form the basis for a cause of action where it was foreseeable that the defendant's conduct would create a risk of harm to the plaintiff and where policy considerations do not preclude recognition of the asserted duty. *Id.,* p 349.[1] See also *Shepard v Redford Community Hospital,* 151 Mich App 242; 390 NW2d 239 (1986). *Welke v Kuzilla,* 144 Mich App 245; 375 NW2d 403 (1985).

The doctor-patient relationship between Biczak and Christine supplies the special relationship. It was foreseeable that a doctor's failure to diagnose a pregnancy could result in someone's having to provide for the child. The likelihood in this case

---

[1] Defendant has also argued a similar line of cases that have evolved under *Davis v Lhim,* 124 Mich App 291; 335 NW2d 481 (1983). These cases concern a psychiatrist's responsibility for the patient's assault on third parties and their analyses have limited applicability. However, even in those situations, the standard is similar to the foreseeability standard of *Duvall,* since the psychiatrist's liability depends on whether the injured party was reasonably identifiable and whether the psychiatrist was aware of the potential for harm. See *Davis, supra; Hinkelman v Borgess Medical Center,* 157 Mich App 314; 403 NW2d 547 (1987).

that the expense would fall on the grandparents is
not so rare or unusual an occurrence as to be
considered unforeseeable. *Duvall, supra*, p 352.
Having found the harm to plaintiffs foreseeable, I
find no policy reason which would preclude recov-
ery. The only person who would profit from a
holding that the grandparents are not entitled to
damages would be the defendant doctor who would
be allowed to escape the consequences of his own
negligence. *Clapham, supra*, p 60. As noted in
*Clapham, supra*, p 61:

> The only thing novel about this case is our
> holding that the grandparents of a minor child's
> baby may obtain damages where they provide for
> the infant's care, just as the baby's parents might
> have. See *Troppi, supra; Stephens v Spiwak*, 61
> Mich App 647; 233 NW2d 124 (1975), lv den 395
> Mich 761 (1975); *Green v Sudakin*, 81 Mich App
> 545; 265 NW2d 411 (1978), lv den 403 Mich 855
> (1978). We believe this is a sound and minor
> extension of existing precedent. A child's grand-
> parents cannot be treated like total strangers in
> respect to a claim such as the one presented here.

Nor would I find that somehow Christine's par-
ents are precluded from receiving damages be-
cause they voluntarily assumed legal responsibility
of the child through adoption. See *Clapham, supra*,
p 58. Once the determination is made that liability
extends to these plaintiffs in these circumstances,
a change in their legal status does not change
their right to recover.

The final question is what recovery is available.
The majority would bar recovery of · damages for
the emotional and economic expenses of raising
the child and thereby discard the "benefits rule"
set forth in *Troppi, supra. Troppi* approached the
recovery of expenses arising from an unplanned

pregnancy as coming under the general tort rule that the wrongdoer is liable for all injuries directly resulting from the wrongful acts. *Troppi, supra,* pp 246, 252. Although recognizing that benefits may naturally flow from the birth of a healthy child, the *Troppi* Court refused to find as a matter of law that these benefits would always outweigh the unexpected costs associated with raising the unplanned child. By allowing the finder of fact to determine the final award by subtracting the benefits from the assessed damages, the Court sought to provide a rule with sufficient flexibility to allow the trier of fact to evaluate all the circumstances of a case and arrive at a reasonable amount of damages. *Troppi, supra,* pp 254-257.

Defendant argues that the benefits rule is a minority opinion among the jurisdictions which have considered this type of recovery and that we should now reject it and align ourselves with the majority view which precludes recovery for the costs of raising the child. I would decline to do so.

To a great extent, those courts which have rejected the *Troppi* approach, see, e.g., *Cockrum, supra; Morris v Sanchez,* 746 P2d 184 (Okla, 1987), echo the reasoning of *Rieck, supra,* and raise issues similar to those addressed in *Troppi* when the rule was adopted. *Troppi, supra,* pp 254-262. In general, those courts which would deny recovery begin with the premise that the parents cannot be damaged by the birth of a normal, healthy baby since human life is so valued that the benefits associated with birth and life will always outweigh any claimed damages.[2] Those courts which align with *Troppi* in general take the view that compen-

---

[2] See *Cockrum, supra; Morris, supra.* A number of jurisdictions have addressed this issue and both these cases present over-views of the issues involved as well as extensive footnotes and references to other decisions and secondary sources. See also Anno: *Tort liability for wrongfully causing one to be born,* 83 ALR3d 15, § 4.

sation is sought as a direct result of the physician's negligence and is recoverable in the same manner as other malpractice awards.[3]

I do not agree that allowing plaintiffs to be compensated for expenditures suffered as a result of the physician's negligence somehow disparages the value of human life or ignores the potential benefits of parenthood.

The injury here is not the child, but the economic reality associated with the unplanned expenses which are the consequences of defendant's negligence. As noted in *Jones v Malinowski,* 299 Md 257, 270; 473 A2d 429, 436 (1984), a negligent sterilization case:

> The parents seek damages, not because they do not love and want to keep the unplanned child, but because the direct, foreseeable and natural consequences of the physician's negligence has forced upon them burdens which they sought and had a right to avoid . . . .

By allowing recovery I would join with the court in *Ochs v Borrelli,* 187 Conn 253, 259; 445 A2d 883, 885-886 (1982), and reject the

> premise that a recognition of the economic costs of parenthood is necessarily a negative judgment on the child who occasions them. We may take judicial notice of the fact that raising a child from birth to maturity is a costly enterprise, and hence injurious, although it is an experience that abundantly recompenses most parents with intangible rewards. There can be no affront to public policy in our recognition of these costs and no inconsistency in our view that parental pleasure softens but does not eradicate economic reality.

---

[3] See, e.g., *Jones v Malinowski,* 299 Md 257; 473 A2d 429 (1984); *University of Arizona Health Sciences Center v Superior Court,* 136 Ariz 579; 667 P2d 1294 (1983); *Ochs v Borrelli,* 187 Conn 253; 445 A2d 883 (1982); *Sherlock v Stillwater Clinic,* 260 NW2d 169 (Minn, 1977).

The unplanned birth in this case has caused plaintiffs to expend both money and emotional energy to discharge a familial responsibility. See *Morris, supra,* p 192 (Kauger, J., concurring and dissenting in part). The finder of fact presumably has determined that the Rinards would not otherwise have experienced these expenditures except for the defendant's negligence. In these circumstances, the benefits rule continues to be an appropriate means of determining damages.

Defendant also appeals the trial court's refusal to give four requested nonstandard jury instructions. The requested instructions either concern the use and qualifications of an expert witness, issues more properly the concern of the court than the jury, or they relate to the weight to be given the expert's testimony. The trial court gave the Standard Jury Instructions on credibility of witnesses and professional negligence which adequately and fairly represented the applicable law to the jury. *Beadle v Allis,* 165 Mich App 516, 525-526; 418 NW2d 906 (1987).

Furthermore, a trial court may properly refuse an instruction where the SJI Committee recommends against an instruction, unless the instruction is necessary to accurately state the law and the matter is not otherwise adequately covered in the instructions. MCR 2.516(D)(3); *Siirila v Barrios,* 398 Mich 576, 595-597; 248 NW2d 171 (1976). The SJI Committee recommends that no instruction on the weighing of expert testimony be given (SJI2d 4.10). I agree with the committee commentary that matters related to weighing expert testimony are best left to the argument of counsel. The requested instructions did not set forth considerations relevant to the jury's deliberation and the court did not abuse its discretion in rejecting them. MCR 2.516(D)(4).

Defendant's final argument is that the trial court erred in admitting evidence over his objection. The decision to admit certain evidence rests within the sound discretion of the trial court and that decision will not be set aside absent an abuse of discretion. *Hadley v Trio Tool Co*, 143 Mich App 319; 372 NW2d 537 (1985). The court allowed testimony regarding an office visit when the patient was six months pregnant as relevant to the claim of malpractice and the defendant's lack of medical knowledge. Testimony regarding the patient's seizures at the time of delivery was admitted as relevant to plaintiffs' claim. Given the nature of the claim in this case, the court did not abuse its discretion in allowing the testimony.

Defendant's post-trial motions for summary disposition, judgment notwithstanding the verdict and a new trial all basically claimed that the Rinards could not have a claim against Biczak because he did not owe them any legal duty. In reviewing the trial court's denial of these motions, this Court views the evidence in the light most favorable to the nonmoving party and decides if judgment for the nonmoving party is precluded as a matter of law. This Court will not reverse the decision of the trial court absent an abuse of its discretion. *Ritchie v Michigan Consolidated Gas Co*, 163 Mich App 358, 367-368; 413 NW2d 796 (1987). Having found that plaintiffs' claims were not precluded as a matter of law, I would affirm the trial court's denial of defendant's motions and affirm the jury verdict for plaintiffs.