Constance J. POOR, Appellant,

v.

Norman MOORE, Appellee.

No. S–3017.

Supreme Court of Alaska.

April 6, 1990.

Rehearing Denied May 14, 1990.

Robert H. Wagstaff, Wagstaff, Pope & Clocksin, Anchorage, for appellant.

Paul W. Waggoner and David E. George, Law Offices of Paul Waggoner, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

We address two questions of law certified from the United States District Court for the District of Alaska pursuant to Appellate Rule 407(a).[1] For purposes of this opinion, we assume that a biofeedback therapist commits professional malpractice by engaging in a sexual relationship with a client. The first question is whether such client may recover as damages the costs of raising a child conceived during the relationship, and whether those costs should be offset by the emotional benefits of having the child. The second question is whether a state court award of child support precludes recovery in tort for the cost of raising the child in such a case.

---

1. Appellate Rule 407(a) provides:

    (a) The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States, or a United States district court when requested by the certifying court if there are involved in any proceeding before

it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decision of the supreme court of this state.

## I. FACTUAL AND PROCEDURAL BACKGROUND.[2]

The following statement of facts is summarized from the certification order of the United States District Court. Constance Poor has an extensive history of mental illness. In 1983, she was hospitalized for severe depression and migraine headaches. She was eventually referred to Norman Moore, a biofeedback therapist. During the course of treatment, Moore seduced Poor.[3] Poor became pregnant and gave birth to a normal, healthy child. Following the birth, Poor refused to allow Moore to see the child.

Moore filed a complaint in state superior court seeking an adjudication of paternity and visitation rights. Poor filed a counterclaim for malpractice and asserted that Moore was not entitled to visitation. The superior court determined that Moore is the child's biological father, ordered child support, and permitted Moore supervised visitation. The superior court dismissed the malpractice counterclaim without prejudice.

Poor then filed a malpractice complaint against Moore in state superior court; Moore removed the case to the federal district court based on diversity of citizenship. In the district court, Poor argued that Moore committed malpractice and sought to recover damages representing, among other things, the costs of raising the child to the age of majority. Moore moved to dismiss the claims against him, arguing that (1) pregnancy and child-rearing expenses are not recoverable in tort, and in the alternative (2) the tort claim is precluded by the prior state court paternity action.

## II. WHEN A CHILD IS CONCEIVED AS A RESULT OF A TORTIOUS SEXUAL RELATIONSHIP BETWEEN A THERAPIST AND HIS CLIENT, MAY THE CLIENT RECOVER FROM THE THERAPIST THE FINANCIAL EXPENSE OF RAISING THE CHILD?

Poor argues that general principles of tort law compel recovery for child-rearing expenses, even if the recovery must be offset by the psychological and emotional benefits of having the child. Moore contends that recovery of child-rearing expenses contravenes public policy.

Poor relies on a line of medical malpractice cases following the birth of an unexpected or handicapped child. The parties analogize this case to the "wrongful pregnancy" cause of action, where the parents of a normal, healthy child sue a health care provider for negligent sterilization, abortion, or provision of birth control.[4]

A majority of courts recognize a cause of action for wrongful pregnancy following a failed sterilization, and permit the parents to recover for medical expenses, pain and suffering, lost wages, and loss of consortium resulting from the failed sterilization, pregnancy and childbirth.[5] Some courts also permit recovery of damages for emo-

---

**2.** Alaska Appellate Rule 407(c)(2) provides that the certification order shall set forth "[a] statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose."

**3.** As part of the "Statement of All Relevant Facts," submitted by the United States District Court for the District of Alaska in conjunction with its certification, the following facts are set forth:

> From April, 1983 to August 10, 1983, defendant treated plaintiff by using biofeedback therapy, hypnotherapy, and psychotherapy. During the course of his treatment of plaintiff, defendant began to make sexual advances toward plaintiff. Defendant planned a trip to Alaska and asked plaintiff to accompany him as part of her therapy. During the trip defendant and plaintiff began to have sexual relations.

**4.** In contrast, a "wrongful birth" action is a claim asserted by the parents of a retarded or handicapped child for negligent sterilization or failure to discover a genetic defect. A "wrongful life" action is a claim asserted by the handicapped or retarded child. *See generally Garrison v. Foy,* 486 N.E.2d 5, 6–7 (Ind.App.1985); *Nanke v. Napier,* 346 N.W.2d 520, 521 (Iowa 1984); *Bruggeman ex rel. Bruggeman v. Schimke,* 239 Kan. 245, 718 P.2d 635, 638 (1986) (declining to recognize a cause of action for wrongful life); *Smith v. Gore,* 728 S.W.2d 738, 741 (Tenn.1987); *Miller v. Johnson,* 231 Va. 177, 343 S.E.2d 301, 303–04 (1986).

**5.** *See, e.g., Boone v. Mullendore,* 416 So.2d 718, 721 (Ala.1982); *Fulton–DeKalb Hosp. Auth. v. Graves,* 252 Ga. 441, 314 S.E.2d 653, 654 (1984); *Cockrum v. Baumgartner,* 95 Ill.2d 193, 69 Ill. Dec. 168, 170, 447 N.E.2d 385, 387 (1983); *Byrd*

tional distress resulting from wrongful pregnancy.[6] Following an approach set forth in § 920 of the Restatement (Second) of Torts (1979), a minority of courts permit recovery of child-rearing expenses, reduced by the value of the psychological and emotional benefits of parenthood.[7] However, the weight of authority precludes recovery of child-rearing expenses in wrongful pregnancy cases.[8]

We conclude that the third party medical malpractice cases do not apply to litigation between the parents of an unplanned child. When inappropriate sexual conduct results in the birth of a child, the victim is not entitled to recover as damages the cost of raising the child, but is entitled to partial reimbursement for actual, reasonable child care expenditures,[9] and an award of prospective child support pursuant to Alaska Rule of Civil Procedure 90.3. The fact that the child was conceived during the commission of a tort on his mother does not relieve her of the statutory and common law duty of support. *See* AS 25.-20.030. The policies underlying this rule were well expressed by the California Court of Appeals in *Barbara A. v. John G.,* 145 Cal.App.3d 369, 193 Cal.Rptr. 422 (1983), where the court said:

[California's child support case law] imposes on the natural father as well as the natural mother of a child the obligation to give the child support and education suitable to his or her circumstances. To assess damages against the mother for false representations about birth control would have the practical effect of reducing or eliminating support from the father by way of offset. Erasing much or all of the father's financial support, to the detriment of the child, is clearly against public policy and the statutory mandate.

Further, we think it is not sound policy to allow one parent to sue the other over

---

*v. Wesley Medical Center,* 237 Kan. 215, 699 P.2d 459, 460 (1985); *Macomber v. Dillman,* 505 A.2d 810, 813 (Me.1986); *O'Toole v. Greenberg,* 64 N.Y.2d 427, 488 N.Y.S.2d 143, 144 n. 2, 477 N.E.2d 445, 446 n. 2 (1985); *Smith,* 728 S.W.2d at 751. *But see Johnston v. Elkins,* 241 Kan. 407, 736 P.2d 935, 940 (1987) (husband recovered expense of negligent vasectomy *and* wife recovered for subsequent hysterectomy); *Weintraub v. Brown,* 98 A.D.2d 339, 470 N.Y.S.2d 634 (N.Y.App.1983) (wife cannot recover for loss of consortium from negligent vasectomy, because husband voluntarily underwent procedure; however, wife can recover loss of consortium from second vasectomy).

6. *E.g., Boone,* 416 So.2d at 721; *Jackson v. Bumgardner,* 318 N.C. 172, 347 S.E.2d 743, 749 (1986); *Smith,* 728 S.W.2d at 741; *Miller,* 343 S.E.2d at 305.

7. *See, e.g., Hartke v. McKelway,* 707 F.2d 1544 (D.C.Cir.1983) (*Hartke* was not followed by the District of Columbia Court of Appeals); *University of Arizona v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983); *Stills v. Gratton,* 55 Cal. App.3d 698, 127 Cal.Rptr. 652 (1976); *Ochs v. Borrelli,* 187 Conn. 253, 445 A.2d 883 (1982); *Jones v. Malinowski,* 299 Md. 257, 473 A.2d 429 (1984); *Troppi v. Scarf,* 31 Mich.App. 240, 187 N.W.2d 511 (1971); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169 (Minn.1977). *But see, Flowers v. District of Columbia,* 478 A.2d 1073 (D.C. 1984).

8. *See, e.g., Boone v. Mullendore,* 416 So.2d 718 (Ala.1982); *Wilbur v. Kerr,* 275 Ark. 239, 628

S.W.2d 568 (1982); *Coleman v. Garrison,* 349 A.2d 8 (Del.1975); *Flowers v. District of Columbia,* 478 A.2d 1073 (D.C.1984); *Fassoulas v. Ramey,* 450 So.2d 822 (Fla.1984); *Fulton–DeKalb Hosp. Auth. v. Graves,* 252 Ga. 441, 314 S.E.2d 653 (1984); *Cockrum v. Baumgartner,* 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385 (1983); *Garrison v. Foy,* 486 N.E.2d 5 (Ind.App.1985); *Nanke v. Napier,* 346 N.W.2d 520 (Iowa 1984); *Byrd v. Wesley Medical Center,* 237 Kan. 215, 699 P.2d 459 (1985); *Schork v. Huber,* 648 S.W.2d 861 (Ky.1983); *Pitre v. Opelousas Gen. Hosp.,* 517 So.2d 1019 (La.App.1987); *Macomber v. Dillman,* 505 A.2d 810 (Me.1986); *Rolf v. Youngblood,* 753 S.W.2d 24 (Mo.App.1988); *Szekeres v. Robinson,* 102 Nev. 93, 715 P.2d 1076 (1986); *Kingsbury v. Smith,* 122 N.H. 237, 442 A.2d 1003 (1982); *Gracia v. Meiselman,* 220 N.J. Super. 317, 531 A.2d 1373 (L.Div.1987); *O'Toole v. Greenberg,* 64 N.Y.2d 427, 488 N.Y.S.2d 143, 477 N.E.2d 445 (1985); *Jackson v. Bumgardner,* 318 N.C. 172, 347 S.E.2d 743 (1986); *Morris v. Sanchez,* 746 P.2d 184 (Okla.1987); *Mason v. Western Pa. Hosp.,* 499 Pa. 484, 453 A.2d 974 (1982); *Smith v. Gore,* 728 S.W.2d 738 (Tenn. 1987); *Terrell v. Garcia,* 496 S.W.2d 124 (Tex. Civ.App.1973); *Miller v. Johnson,* 231 Va. 177, 343 S.E.2d 301 (1986); *McKernan v. Aasheim,* 102 Wash.2d 411, 687 P.2d 850 (1984); *James G. v. Caserta,* 332 S.E.2d 872 (W.Va.1985); *Rieck v. Medical Protective Co.,* 64 Wis.2d 514, 219 N.W.2d 242 (1974); *Beardsley v. Wierdsma,* 650 P.2d 288 (Wyo.1982).

9. *See, e.g., Matthews v. Matthews,* 739 P.2d 1298, 1299 (Alaska 1987).

the wrongful birth of their child. Using the child as a damage element in a tortious claim of one parent against the other could seldom, if ever, result in benefit to a child. Such a lawsuit would indeed be strong evidence of parental rejection, which could only be emotionally detrimental to the child.

We agree with these policies, and hold that in the circumstances presented by this record, Poor may not recover as damages from Moore the costs of raising her son. Again, assuming Moore committed professional malpractice in seducing Poor, Poor is entitled to recover tort damages for any injury to Poor proximately resulting from Moore's conduct. Thus, Poor may recover medical expenses, pain and suffering, and lost wages resulting from the tort. Poor may also recover any damages which a client under like circumstances who did not become pregnant, could recover, including damages for emotional distress,[10] as well as punitive damages,[11] if warranted.

---

10. *See, e.g., Teamsters Local 959 v. Wells,* 749 P.2d 349, 357 (Alaska 1988).

11. *See, e.g., Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 46–49 (Alaska 1979); *see also Marston v. Minneapolis Clinic of Psychiatry,* 329 N.W.2d 306, 311–12 (Minn.1983).