**M.A., individually and as parent and next friend to J.A., and N.A., as parent and next friend to J.A., a minor child, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. S–7593.**

Supreme Court of Alaska.

Jan. 2, 1998.

---

Keenan Powell, Powell & Slaten, LLC, Anchorage, for Plaintiff.

Richard L. Pomeroy, Assistant United States Attorney, and Robert C. Bundy, United States Attorney, Anchorage, for Defendant.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

We accepted certification in this case to decide whether a cause of action exists under Alaska law for a physician's negligent failure to diagnose a pregnancy and, if so, the scope of recovery allowed under that cause of action. We conclude that negligent failure to diagnose a pregnancy gives rise to a cause of action for medical malpractice and is compensable to the extent that damages are ordinarily allowable in medical malpractice cases, but that no recovery may be awarded for expenses of rearing a healthy child born as a result of the misdiagnosis.

### II. FACTS AND PROCEEDINGS

M.A. and N.A., acting on behalf of their minor daughter, J.A., filed a suit in federal court against the United States of America (the United States) for injuries stemming from the allegedly negligent failure of an Alaska Native Medical Center physician to diagnose J.A. as being pregnant. M.A. and N.A. contend that the negligence delayed J.A.'s awareness of her condition and precluded her from safely aborting her child, thus resulting in the birth of a healthy child. M.A. separately seeks damages in her own right for negligent infliction of emotional distress.

Upon the filing of cross motions for summary judgment, the United States District Court for the District of Alaska certified the following questions:

1. Does negligent failure to diagnose a pregnancy which results in the birth of a healthy child give rise to a cause of action for medical malpractice?

2. In a cause of action for negligent failure to diagnose pregnancy, what damages are recoverable for the birth of a healthy child?

3. Specifically, would recoverable damages include past medical expenses, pain and suffering of the mother, and the cost of raising the child?

4. Would any recoverable damages be offset by the benefits the parent derives from the child?

5. If the mother is precluded from bringing a claim for negligent failure to diagnose pregnancy, may a close relative bring a claim for negligent infliction of emotional distress?

We accepted certification pursuant to Alaska Appellate Rule 407[1] and now address these questions.

---

1. Appellate Rule 407(a) provides:
   The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States, [or] a United States district court ... when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

## III. DISCUSSION

### A. Standard of Review

A decision by this court upon certification from another court involves determinative questions of Alaska law as to which there is no controlling precedent. Appellate Rule 407(a). Because we address questions of law and essentially stand in the shoes of the certifying court, we must exercise our independent judgment and select "the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). For purposes of resolving the certified questions, we assume that J.A.'s treating physician negligently failed to diagnose her pregnancy, thereby precluding J.A. from opting for an abortion and resulting in her delivery of a healthy child. *See Poor v. Moore*, 791 P.2d 1005, 1005, 1008 (Alaska 1990).

### B. Should a Cause of Action Be Recognized for a Physician's Negligent Failure to Diagnose a Pregnancy?

We first consider whether to recognize a cause of action for negligent failure to diagnose a pregnancy.[2] The United States,

arguing that the issue is one of public policy, undertakes an analysis under *D.S.W. v. Fairbanks North Star Borough School District*, 628 P.2d 554, 555 (Alaska 1981), where we adopted a multifactored test for deciding whether a legal duty should be deemed to arise in novel situations.[3] The result of the *D.S.W.* analysis, in the United States' view, is that no duty should be imposed here.

The *D.S.W.* test, however, does not apply if the existence of a duty is governed by statute.[4] In the present case, the United States' argument mistakenly assumes the absence of any generally applicable physician-patient duty arising under statute. The subject of medical malpractice is addressed in AS 09.55.530–.560, whose express purpose is to "codify the law with regard to medical liability." AS 09.55.530. Alaska Statute 09.55.540(a) specifically describes a physician's duty to act with "the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the [doctor's] field or specialty."[5] The diagnosing of pregnancy is well within the mainstream of commonly ren-

---

2. Michigan and New York recognize this cause of action. *Rinard v. Biczak*, 177 Mich.App. 287, 441 N.W.2d 441 (1989); *Debora S. v. Sapega*, 56 A.D.2d 841, 392 N.Y.S.2d 79 (1977). Illinois and Wisconsin have declined to do so. *Cockrum v. Baumgartner*, 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385 (1983); *Rieck v. Med. Protective Co.*, 64 Wis.2d 514, 219 N.W.2d 242 (1974). *See also Butler v. Rolling Hill Hosp.*, 382 Pa.Super. 330, 555 A.2d 205 (1989) (Pennsylvania statute prohibiting causes of action for wrongful life or wrongful birth precluded cause of action for failure to diagnose pregnancy).

3. Specifically, we quoted with approval the test articulated in *Peter W. v. San Francisco Unified School District*, 60 Cal.App.3d 814, 131 Cal.Rptr. 854, 859–60 (1976):

   [t]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*See D.S.W.*, 628 P.2d at 555. *See also Hawks v. State of Alaska*, 908 P.2d 1013, 1016 (Alaska 1995), and *Estate of Day v. Willis*, 897 P.2d 78, 81 (Alaska 1995).

4. *See Estate of Day v. Willis*, 897 P.2d at 81 ("Whether a legal duty exists, when not governed by statute, is a public policy question involving specified considerations that this court enumerated in [*D.S.W.*].").

5. AS 09.55.540(a) provides:

   [T]he plaintiff [in an action based on negligence] has the burden of proving by a preponderance of the evidence
   1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;
   2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and
   3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

dered medical services to which this provision applies.

■ Moreover, the United States' *D.S.W.* analysis focuses too heavily on the specific circumstances of the present case. The existence of a duty turns not on the particularized facts of a given case, but rather on the basic nature of the relationship between the parties to the cause of action.[6] On past occasions we have recognized that the unique nature of the physician-patient relationship confers upon physicians a fiduciary responsibility toward their patients. *See Chizmar v. Mackie,* 896 P.2d 196, 203–04 (Alaska 1995) (holding that a doctor has the duty to refrain from conduct that would foreseeably result in emotional harm to a patient).

Given the provisions of AS 09.55.540(a) and this court's recognition of the fiduciary nature of the physician-patient duty, we conclude that a complaint alleging an examining physician's negligent failure to diagnose a pregnancy, as well as proximately resulting injuries, states a valid cause of action for medical malpractice.

### C. Are Expenses of Child Rearing Compensable when Negligent Misdiagnosis Results in the Birth of a Healthy Child?

■ The more difficult question is how to conceptualize and compensate injuries stemming from this tort. The United States con-

cedes that if negligent failure to diagnose a pregnancy is to be recognized as a viable cause of action, a plaintiff who proves that a misdiagnosis has precluded termination of the pregnancy should. be entitled to recover ordinary tort damages through the time of childbirth, including medical expenses, pain and suffering associated with the pregnancy and delivery, and lost wages. *Cf. Poor v. Moore,* 791 P.2d 1005, 1008 (Alaska 1990). Damages for emotional distress would also be recoverable. *See Chizmar v. Mackie,* 896 P.2d at 203–04.

A harder issue is whether the costs of raising a healthy child may additionally be awarded and, if so, whether these damages should be offset by the benefits of parenthood. Neither of the two jurisdictions recognizing a cause of action for negligent failure to diagnose a pregnancy has held that child-rearing expenses are compensable. *See Rinard v. Biczak,* 177 Mich.App. 287, 441 N.W.2d 441 (1989); *Debora S. v. Sapega,* 56 A.D.2d 841, 392 N.Y.S.2d 79 (1977).

Courts dealing with the related issue of "wrongful pregnancy"—a category typically encompassing failed sterilization procedures resulting in unwanted pregnancies [7]—are divided on the recoverability of child-rearing expenses: some allow full recovery, others adopt a mixed approach in which expenses are offset by the benefits of having a child, but most allow no recovery.[8] This split in

---

6. *Cf.* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 356 (5th ed. 1984) ("It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation.").

7. *See Poor v. Moore,* 791 P.2d at 1006. In contrast, in a case involving negligent failure to diagnose a pregnancy, there is no causal link between the negligence and the pregnancy.

8. Wrongful pregnancy cases allowing full recovery of childrearing expenses include *Lovelace Med. Ctr. v. Mendez,* 111 N.M. 336, 805 P.2d 603 (1991); *Zehr v. Haugen,* 318 Or. 647, 871 P.2d 1006 (1994); and *Marciniak v. Lundborg,* 153 Wis.2d 59, 450 N.W.2d 243 (1990) (however, Wisconsin has rejected a cause of action for failure to diagnose pregnancy (*Rieck v. Med. Protective Co.,* 64 Wis.2d 514, 219 N.W.2d 242 (1974)).

Cases following the mixed approach, or "benefits rule," include *Hartke v. McKelway,* 707 F.2d 1544 (D.C.Cir.1983) (not followed by the D.C. Court of Appeals); *University of Arizona v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983); *Stills v. Gratton,* 55 Cal.App.3d 698, 127 Cal. Rptr. 652 (1976); *Ochs v. Borrelli,* 187 Conn. 253, 445 A.2d 883 (1982); *Jones v. Malinowski,* 299 Md. 257, 473 A.2d 429 (1984); *Burke v. Rivo,* 406 Mass. 764, 551 N.E.2d 1 (1990); and *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169 (Minn. 1977) (questionable in light of dicta in *Hickman v. Group Health Plan, Inc.,* 396 N.W.2d 10 (Minn. 1986)).

Cases precluding recovery for child-rearing expenses include *Boone v. Mullendore,* 416 So.2d 718 (Ala.1982); *Wilbur v. Kerr,* 275 Ark. 239, 628 S.W.2d 568 (1982); *Coleman v. Garrison,* 349 A.2d 8 (Del.1975); *Flowers v. District of Columbia,* 478 A.2d 1073 (D.C.1984); *Fassoulas v. Ramey,* 450 So.2d 822 (Fla.1984); *Fulton–DeKalb Hosp. Auth. v. Graves,* 252 Ga. 441, 314 S.E.2d 653 (1984); *Cockrum v. Baumgartner,* 95 Ill.2d

authority in wrongful pregnancy cases largely reflects diverging policy views.[9] States denying childrearing expenses advance two principal rationales: first, the fear that children might someday suffer harm upon learning that they were not wanted and that a person other than a parent funded their upbringing; [10] second, the belief that a normal, healthy child should not be regarded as an injury.[11] An additional rationale sometimes mentioned is that child-rearing costs are too speculative.[12] Courts allowing recovery for wrongful pregnancy have disparaged each of these rationales.[13]

In assessing the relative persuasiveness of these divergent authorities, we take guidance from *Poor v. Moore*, 791 P.2d at 1007–08, where we declined to allow child-rearing expenses to a mother who had been seduced and impregnated by her therapist. We assumed in *Poor* that the act of seduction amounted to malpractice, but we nonetheless concluded that the tortious conduct should not relieve the mother of her duty to support her child. *Id.* We took the view that recovery of this kind "could seldom, if ever, result in benefit to a child." *Id.* at 1008 (quoting *Barbara A. v. John G.*, 145 Cal.App.3d 369, 193 Cal.Rptr. 422 (1983)).

While M.A. and N.A. accurately observe that *Poor* is not binding here because that case involved an action by one parent against another, *Poor* is nonetheless highly persuasive. For if "[t]he fact that the child was conceived during the commission of a tort on his mother does not relieve her of the statutory and common law duty of support," *Poor*, 791 P.2d at 1007, then it would seem anomalous that the fact of a failure to diagnose a pregnancy should relieve both parents of their duty to care for a child whom they conceived through a volitional act of sexual intercourse.

There is also reason to fear that such a rule would tend to influence the fates of children who are born of unplanned and unwanted pregnancies. When a young mother like J.A. considers whether to keep or relinquish for adoption her newborn child, she faces a profoundly difficult and uniquely personal decision. The child's best interests will clearly be served if this decision is firmly grounded in the mother's family values, her moral convictions, and her feelings for her child; yet a rule permitting awards of child-rearing expenses might encourage a decision founded instead on the vagaries of legal

193, 69 Ill.Dec. 168, 447 N.E.2d 385 (1983); *Garrison v. Foy*, 486 N.E.2d 5 (Ind.App.1985); *Nanke v. Napier*, 346 N.W.2d 520 (Iowa 1984); *Byrd v. Wesley Med. Ctr.*, 237 Kan. 215, 699 P.2d 459 (1985); *Schork v. Huber*, 648 S.W.2d 861 (Ky.1983); *Pitre v. Opelousas Gen. Hosp.*, 517 So.2d 1019 (La.App.1987); *Macomber v. Dillman*, 505 A.2d 810 (Me.1986); *Rinard v. Biczak*, 177 Mich.App. 287, 441 N.W.2d 441 (1989); *Rolf v. Youngblood*, 753 S.W.2d 24 (Mo.App.1988); *Hitzemann v. Adam*, 246 Neb. 201, 518 N.W.2d 102 (1994); *Szekeres v. Robinson*, 102 Nev. 93, 715 P.2d 1076 (1986); *Kingsbury v. Smith*, 122 N.H. 237, 442 A.2d 1003 (1982); *Gracia v. Meiselman*, 220 N.J.Super. 317, 531 A.2d 1373 (1987) (dicta); *O'Toole v. Greenberg*, 64 N.Y.2d 427, 488 N.Y.S.2d 143, 477 N.E.2d 445 (1985); *Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E.2d 743 (1986); *Johnson v. Univ. Hosps. of Cleveland*, 44 Ohio St.3d 49, 540 N.E.2d 1370 (1989); *Morris v. Sanchez*, 746 P.2d 184 (Okla.1987); *Mason v. Western Pa. Hosp.*, 499 Pa. 484, 453 A.2d 974 (1982); *Smith v. Gore*, 728 S.W.2d 738 (Tenn. 1987); *Terrell v. Garcia*, 496 S.W.2d 124 (Tex. Civ.App.1973); *C.S. v. Nielson*, 767 P.2d 504 (Utah 1988); *Miller v. Johnson*, 231 Va. 177, 343 S.E.2d 301 (1986); *McKernan v. Aasheim*, 102 Wash.2d 411, 687 P.2d 850 (1984); *James G. v. Caserta*, 175 W.Va. 406, 332 S.E.2d 872 (1985);

and *Beardsley v. Wierdsma*, 650 P.2d 288 (Wyo. 1982).

See generally *Poor*, 791 P.2d at 1006–07.

**9.** See generally Russell G. Donaldson, Annotation, *Recoverability of Cost of Raising Normal, Healthy Child Born as Result of Physician's Negligence or Breach of Contract or Warranty* § 2[a], 89 A.L.R.4th 632 (1991).

**10.** See, e.g., *Boone v. Mullendore*, 416 So.2d 718 (Ala.1982); *Wilbur v. Kerr*, 275 Ark. 239, 628 S.W.2d 568 (1982).

**11.** See, e.g., *Cockrum v. Baumgartner*, 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385 (1983).

**12.** See, e.g., *Boone v. Mullendore*, 416 So.2d 718 (Ala.1982); *Sorkin v. Lee*, 78 A.D.2d 180, 434 N.Y.S.2d 300 (1980).

**13.** See, e.g., *Burke v. Rivo*, 406 Mass. 764, 551 N.E.2d 1, 4–5 (1990) (disparaging future harm to child rationale); *University of Arizona v. Superior Court*, 136 Ariz. 579, 667 P.2d 1294, 1298–99 (1983) (criticizing sanctity of life rationale); and *Marciniak v. Lundborg*, 153 Wis.2d 59, 450 N.W.2d 243, 245–46 (1990) (rejecting rationale of uncertainty).

strategy and the desire for compensation. The risk of this pernicious influence weighs heavily against any arguable benefit that might be gained from an award of. child-rearing expenses.

On prior occasions we have recognized and invoked our "power to limit claims ... for public policy reasons." *Chizmar*, 896 P.2d at 211. We find such restraint necessary here. We hold that a claim of medical malpractice involving negligent failure to diagnose a pregnancy may result in recovery of ordinary tort damages for proximately caused injuries;[14] those damages may compensate for injuries incurred through the time of childbirth. Beyond that point, no compensation for expenses or other damages related to rearing a healthy child may be allowed.

### D. *May M.A. Independently Recover for Negligently Inflicted Emotional Distress?*

■ The final question centers on M.A.'s right to recover independently of J.A. for emotional distress that M.A. incurred as a result of the misdiagnosis of her ·daughter's condition.

To recover in an action for negligent· infliction of emotional distress, M.A. must have a viable "bystander claim" or establish that J.A.'s physician owed M.A. a preexisting duty. *Chizmar v. Mackie*, 896 P.2d 196, 201, 203–04 (Alaska 1995); *see also Hawks v. State of Alaska*, 908 P.2d 1013, 1016 (Alaska 1995). M.A. asserts that she was owed an independent duty by her daughter's physician—that, in assuming responsibility for treating J.A., J.A.'s physician also "undertook a duty directly to M.A. to act with the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances by health care providers[.]" Yet the source of a physician's duty to provide reasonably competent care lies in the unique nature of the physician-patient relationship.[15] M.A. had no physician-patient relationship with her daughter's physician; nor does M.A. establish any other source from which a duty toward her might have arisen.[16]

■ Furthermore, the circumstances of this case. could not support the type of "bystander claim" that allows recovery for emotional distress in the absence of a preexisting duty. Under *Mattingly v. Sheldon Jackson College*, 743 P.2d 356, 365–66 (Alaska 1987), a bystander claim is permissible when a person closely related to a tort victim and in near proximity to the scene of the negligent injury suffers severe and foreseeable emotional distress due to "shock result[ing] more or less contemporaneously with," or "follow[ing] closely on the heels of," the injury's discovery. Here, M.A. was not in close proximity to J.A., either at the time of the alleged misdiagnosis or when J.A. subsequently learned of her pregnancy; M.A.'s eventual "shock," if any, does not appear to have occurred contemporaneously with her daughter's discovery of the injury; and there is no indication that the immediate "shock" came in response to the alleged injury—the lateness of the pregnancy's discovery—rather than to discovery of the pregnancy itself.

We do not question the devastating emotional impact on M.A. that was caused by news of J.A.'s pregnancy. The present case is nevertheless clearly not a suitable one for bystander recovery. Absent any colorable

14. As we said in *Poor*, 791 P.2d at 1008 (footnotes omitted), the plaintiff

is entitled to recover tort damages for any injury ... proximately resulting from [the defendant's] conduct. Thus, [the plaintiff] may recover medical expenses, pain and suffering, and lost wages resulting from the tort. [The plaintiff] may also recover any damages which a client under like circumstances who did not become pregnant, could recover, including damages for emotional distress, as well as punitive damages, if warranted.

15. *Cf. Chizmar*, 896 P.2d at 205 ("As Savitri's treating physician, Dr. Mackie *owed her* a duty to

refrain from activity which presented a foreseeable and unreasonable risk of causing emotional distress." (emphasis added)); *Burgess v. Superior Court*, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 622, 831 P.2d 1197, 1204 (1992) ("Under the facts of this case, [the mother] is ... permitted to recover ... *as a result of the breach of the duty of care arising from the physician-patient relationship* [.]" (emphasis added)).

16. There is no suggestion here of a potential contractual duty, since it is undisputed that M.A. did not take her daughter to the hospital or arrange for her to be examined.

claim of a preexisting duty by J.A.'s physician toward M.A. or of circumstances creating bystander liability, M.A. has no independent right to recover for emotional distress resulting from negligent misdiagnosis of her daughter's condition.

## IV.  CONCLUSION

To summarize, we hold that negligent failure to diagnose a pregnancy that results in the birth of a healthy child gives rise to a cause of action for medical malpractice.  Recoverable damages include damages through the time of birth that could ordinarily be recovered in a medical malpractice action.  But following birth, the cost of raising a healthy child and other damages relating to child-rearing are not recoverable.  And absent a preexisting duty or circumstances establishing a bystander claim, there is no independent cause of action on the part of the patient's relatives for negligent infliction of emotional distress.